505 S.E.2d 674

**Joyce Lynn STEVENS, Plaintiff below, Appellant,**

v.

**Thomas Rockne STEVENS, Jr., Defendant below, Appellee.**

**No. 24758.**

Supreme Court of Appeals of West Virginia.

Submitted May 13, 1998.

Decided July 2, 1998.

---

F. Alfred Sines, Jr., Victoria L. Casey, Charleston, for Appellant.

R. Joseph Zak, Zak & Associates, Charleston, for Appellee.

PER CURIAM:[1]

Joyce Stevens, the appellant, appeals an April 18, 1997 order by the Circuit Court of Boone County that adopted the findings and recommendations of a family law master. The appellant appeals the amount of equitable distribution and attorney fees. Appellant further argues that the circuit court abused its discretion in withholding statutory interest on the equitable distribution which had been awarded. We affirm in part, reverse in part and remand.

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. The second one-half undivided interest was owned by the appellee's father.

3. The law master examined all of the valuations for the funeral home business, the first being for $571,066.00, the second totaled $595,000.00, and the third totaled $466,408.00. The appraisal for $571,066.00 was the amount that the law master used in determining the marital assets.

4. The appraiser used the following factors to arrive at his conclusion:

## I.

The appellant and the appellee, Thomas Stevens, Jr., were married on September 22, 1979 and separated on August 16, 1993, after which they filed for divorce in Boone County. During the course of their marriage the couple had three children.

At the time of the divorce the parties were owners of a one-half undivided interest in a funeral home business,[2] and the appellant was a partner in a local real estate business. Some time prior to the final divorce hearing, the appellant purchased her real estate partner's share of that business.

In anticipation of the divorce hearing, the parties obtained the services of several experts to ascertain the value of the two business interests owned by the parties. The record is incomplete regarding which expert was retained by each party, but it would appear that one of the experts for the appellant was the one that the family law master found to be the most reasonable and balanced.[3] In determining the value of the funeral home business, this expert appraiser examined the "intrinsic value of the assets, the value of the income flow, and the fair market value of the equity in the marketplace."[4] This same expert witness evaluated the value of the real estate business.

In addition to the funeral home and real estate businesses, the parties also owned a house in which neither party resided. No appraisal had been done of the house prior to the final divorce hearing.

a) the nature and history of the enterprise from inception,
b) the economic outlook in general and the condition and outlook of the specific industry in particular,
c) the book value and the financial condition of the business,
d) the earning capacity of the business,
e) dividends and dividend-paying capacity,
f) goodwill or other intangible value,
g) sales of similar businesses and the size of the block valued, and
h) the market price of businesses engaged in the same or a similar line of business having actively traded in a free and open market.

The family law master determined that each party's equitable share in the funeral home business was $150,447.25. The law master further determined that each party's equitable share in the real estate business was $15,361.50. With the determination that the appellant would retain the parties' full interests in the real estate business, and that the appellee would retain their full interests in the funeral home business, the law master subtracted the value of the appellee's interests in the real estate business from the appellant's interest in the funeral home business and, as a final award, recommended that the appellant receive from the appellee $135,085.75 as equitable distribution. Additionally, the proceeds from the sale of the jointly-owned house were to be equally divided.

The law master also directed that the house be sold, with the recommendation that the appellee not be required to pay to the appellant her share of the equitable distribution until 6 months after the sale of the house. The house has yet to be sold and the appellant has yet to receive any portion of her equitable distribution.

The family law master recommended only $1,000.00 in attorney fees for the appellant due to the large amount of liquid assets she was going to receive.

Both parties filed petitions for review and their exceptions to the family law master order were argued before the circuit court. The circuit court subsequently denied both parties' exceptions and adopted the recommended order of the family law master. This appeal followed.

## II.

The standard of review for this case is a three-pronged analysis:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syllabus Point 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

The appellant first assigns as error the circuit court's failure to consider "preneed funeral monies" held in escrow accounts maintained by the appellee's funeral home as martial assets. Preneed funeral contracts are permitted in this State to enable individuals to arrange and pay for funerals for themselves or for family members in advance of need. Strict laws have been enacted to provide "all possible safeguards whereunder such prepaid funds cannot be dissipated, whether intentionally or not, in order that such funds are available for the payment of funeral services so arranged." *W.Va.Code*, 47-14-1 [1995].

Preneed funeral contracts may be canceled prior to the death of the beneficiary. *W.Va. Code*, 47-14-6(b) [1995]. In addition to the beneficiary being able to cancel the contract, the beneficiary may also transfer the contract to another funeral home even if the contract has been made irrevocable. *W.Va. Code*, 47-14-8(d) [1995]. If it is determined at the time of the beneficiary's death that there are insufficient funds from the beneficiary's account, the funeral home must provide those services and materials agreed to at no additional cost. *W.Va.Code*, 47-14-7(b)(1) [1995]. If after paying for the services and costs of the funeral, it is determined that there is a surplus of funds in the beneficiary's account, the funeral home must return the balance to the estate of the beneficiary or as otherwise provided for in the contract. *W.Va.Code*, 47-14-7(b)(2) [1995].

However, the statutes that govern preneed funeral contracts do provide that a funeral home business which sells preneed funeral contracts "may retain for ... [its] own use and benefit ... an amount not to exceed ten percent of the total original amount" for selling expenses and overhead. *W.Va.Code*, 47-14-5(a)(1) [1995].

It is obvious from a reading of these statutes that preneed funeral contracts are primarily for future services and the funeral home cannot use most of the money prior to the fulfillment of the services. Not only is

the money not to be used by the business until some uncertain time, but the contract may be canceled, or it may be transferred to another funeral home. Thus, as assets, our laws make contracts for preneed funerals, other than the small amount permitted for costs and overhead, of highly speculative worth.

■ Equitable distribution is derived by a division of marital property:

> For purposes of equitable distribution, *W.Va.Code*, 48–2–32(d)(1) (1984), requires that a determination be made of the net value of the marital property of the parties.

Syllabus Point 2, *Tankersley v. Tankersley,* 182 W.Va. 627, 390 S.E.2d 826 (1990).

The appellant argues that the preneed contracts created during the course of her marriage to the appellee are marital assets and should be valued for equitable distribution. Appellant attempts to analogize preneed funeral contracts to the contingency fees that were at issue in *Metzner v. Metzner,* 191 W.Va. 378, 446 S.E.2d 165 (1994). In *Metzner* we held:

> Contingent and other future earned fees which an attorney might receive as compensation for cases pending at the time of a divorce should be treated as marital property for purposes of equitable distribution. However, only that portion of the fee that represents compensation for work done during the marriage is actually "marital property" as defined by our statute.

Syllabus Point 5, in part, *Metzner, supra.*

Our analysis in *Metzner* determined when contingent fees are to be viewed as marital assets for the purpose of equitable distribution. We examined several cases from other states which stood for the proposition that in a divorce proceeding, marital assets may include contingency fees for a divorce litigant who is an attorney. We based our decision on earned fees, not somewhat speculative fees, which is what we have in this matter.

In *Metzner* we emphasized that "only that portion of the fee that represents compensation for work done during the marriage is 'marital property'...." *Metzner,* 191 W.Va. at 387, 446 S.E.2d at 174. The funeral ser-

vices performed for a preneed funeral contract occurs when the beneficiary dies, which is a future event, and, as most of these fees were never earned during the marriage, that portion is not marital property. The up to ten percent service fee would have been earned prior to the dissolution of the marriage and would be marital property.

In this case the circuit court found, based on plaintiff's own expert's appraisal, that:

> [T]he escrowed "pre-need funeral money" which was earned during the cohabitation of the parties [was] embedded in the valuation of the corporation at the time of the parties' separation.

An analysis of the appraisal accepted by the circuit court suggests that the appellant's expert fully evaluated all financial data and business records of the parties' funeral business. We agree with the circuit court that the preneed funeral contracts were considered in the appraisal.

■ The appellant next argues that the circuit court erred in not awarding her interest on her share of the equitable distribution, which is to be paid at an uncertain date in the future. This Court has previously held that:

> Where the value of an equitable distribution asset is payable over a term of years, interest should be paid at the going rate in the absence of some special hardship factor shown by the obligor.

Syllabus Point 7, *Bettinger v. Bettinger,* 183 W.Va. 528, 396 S.E.2d 709 (1990).

The appellee made no showing of hardship which would justify not awarding interest. The appellee is able to live rent-free, and to have all of his utilities paid for by the funeral business. He has apparently not suffered a reduction in his standard of living following the separation of the parties. Therefore, we find that post-judgment interest on the equitable distribution shall be awarded beginning from the date of the circuit court's order.

■ Finally, the appellant argues that the circuit court erred in awarding her only $1,000.00 for attorney fees, after she submitted documentation showing fees of $10,-000.00. We have previously set forth those

factors which a family law master must examine in deciding when to award attorney fees and what that award should be. These factors are as follows:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syllabus Point 4, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996).

In the instant case, the family law master based her decision solely on the fact that the appellant would be receiving a substantial amount of liquid assets as a result of the equitable distribution. This approach does not conform to the analysis which is required by *Banker,* and we find the award of $1,000.00 to be an abuse of the law master's discretion.

### III.

Accordingly, the circuit court's order of April 18, 1997 is affirmed in regard to the preneed funeral contracts and equitable distribution issue. We reverse the trial court on the issues of post-judgment interest and attorney fees. We remand this matter for further proceedings in accordance with this ruling.

Affirmed in part; reversed in part; and remanded.