589 S.E.2d 536

**Hillman H. MAY, Appellant,**

v.

**Carol S. MAY, Appellee.**

**No. 31123.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 2003.

Decided Nov. 10, 2003.

Concurring Opinion of Justice Albright Dec. 4, 2003.

Albright, J., concurred in separate opinion.

Lawrence L. Manypenny, Esq., New Cumberland, West Virginia, Attorney for Appellant.

Thomas J. DeCapio, Esq., Frankovitch, Anetakis, Colantonio & Simon, Weirton, West Virginia, Attorney for Appellee.

Justice ALBRIGHT concurs and reserves the right to file a concurring opinion.

DAVIS, Justice:

This matter arises from a final order of the Family Court of Hancock County resolving the equitable distribution of marital property between Hillman H. May (hereinafter referred to as "Dr. May"), appellant/defendant below, and Carol S. May (hereinafter referred to as "Mrs. May"), appellee/plaintiff below. In this appeal, Dr. May contends that the family court judge erred in adopting a report by Mrs. May's expert that assigned a value for goodwill to his dental practice, and erred in the distribution of real property. After considering the briefs and oral arguments of the parties, we affirm in part, reverse in part, and remand.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties were married on June 23, 1979. In 1980, the couple built a home on property adjacent to Dr. May's dental office.[1] From about 1980 to 1993, Mrs. May "worked at least 20 hours per week" at Dr. May's dental office.[2] During the marriage the parties had three children.

On May 22, 2000, Mrs. May filed for divorce. On September 24, 2001, the Circuit Court of Hancock County granted the parties a divorce on the grounds of irreconcilable differences. The decree granting the divorce left unresolved the issue of the distribution of marital property.[3] That issue was subsequently litigated in front of the family court judge.

During the proceeding before the family court judge, the parties presented expert testimony on the valuation of Dr. May's solo dental practice. Dr. May's expert valued the dental practice at $55,000.00, which included a 20% discount for lack of marketability. Mrs. May's expert placed a fair market value on the dental practice at $120,000.00. The fair market value included a value for goodwill.

By order entered on February 26, 2002, the family court judge adopted the dental practice valuation proffered by Mrs. May's expert. Mrs. May's equitable distribution payment for her interest in the dental practice was payable to her in the amount of $889.00 per month from June 1, 2004, to May 31, 2012. Additionally, the family court judge found that the real estate involved in the case was marital property that had a net value of $125,324.44. Mrs. May was awarded a one-half interest in the value of the real estate. From these rulings, Dr. May filed an appeal directly to this Court.

## II.

### STANDARD OF REVIEW

This case presents the first opportunity for this Court to address the issue of the standard of review of a direct appeal from a final order of a family court judge. The family law master system ceased to operate on January 1, 2002. It was replaced by a family court system. *See* W. Va.Code § 51–2A–1 *et seq.* (Supp.2003). In creating the family court system, the Legislature provided that an appeal of a family court judge's decision may be taken to a circuit court. *See* W.

---

**1.** On February 14, 1978, Dr. May and his mother purchased real estate, including the office building, in Chester, West Virginia. Dr. May and his mother each had a one-half interest in the property. In November, 1978, Dr. May opened his dental practice on the property. On February 7, 1985, Dr. May's mother and father conveyed to him their interest in the property.

**2.** In 1993, Mrs. May entered a nursing program. After four years, she obtained a degree as a licensed practical nurse.

**3.** Other issues not pertinent to this appeal were also left for the family court judge to resolve.

Va.Code § 51–2A–14 (Supp.2003). The decision of the circuit court then may be appealed to this Court. *See* W. Va.Code § 51–2A–15(b) (Supp.2003). Additionally, the Legislature has provided that a litigant may waive the right to appeal to the circuit court and prosecute an appeal directly to this Court. *See* W. Va.Code § 51–2A–15(a) (Supp.2003). *But see* Syl. pt. 5, *State ex rel. Silver v. Wilkes,* 213 W.Va. 692, 584 S.E.2d 548 (2003) ("Where circuit courts have concurrent original jurisdiction with the West Virginia Supreme Court of Appeals over matters arising in family court, the preferred court of first resort is the circuit court.").

██ The standard of review by this Court, either from an appeal of a decision by a circuit court or an appeal directly from a ruling by a family court judge, is set forth in W. Va.Code § 51–2A–14(b).[4] Pursuant to this statute, in reviewing a final order of a family court judge that is appealed directly to this Court, we review findings of fact by a family court judge under the clearly errone-

ous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

## III.

## DISCUSSION

██ The main issue presented in this appeal[5] is whether the family court judge erred by adopting a fair market value of Dr. May's dental practice provided by Mrs. May's expert which fair market value included a valuation for goodwill. The evidence established that Dr. May operated a dental office that should be characterized as a professional practice.[6] In this regard, courts have developed a specific body of law to address the issue of goodwill in a professional practice in the context of divorce litigation.[7] Because Dr. May was a sole practitioner[8] in his dental office, we will examine the case law applicable to goodwill in a professional practice,[9] and thereby determine whether goodwill may be assigned to Dr.

---

**4.** The appellate jurisdiction of this Court that is set out in W. Va.Code § 51–2A–15 references the standard of review set out in W. Va.Code § 51–2A–14(b).

**5.** We find no merit to Dr. May's additional argument regarding the equitable distribution of the real estate. The record supports the family court judge's determination that marital assets were used to increase the net value of the real estate. *See* Syl. pt. 2, in part, *Mayhew v. Mayhew,* 205 W.Va. 490, 519 S.E.2d 188 (1999) ("Active appreciation of separate property of either of the parties to a marriage, or that increase which 'results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage' is marital property which is subject to equitable distribution."(internal quotations and citation omitted)).

**6.** Although the parties and the family court judge loosely characterized this issue in the context of goodwill in a closely-held corporation, there was no evidence that Dr. May's solo dental practice was a closely-held corporation. "A closely-held corporation cannot be defined with exactitude. Generally, it is a 'corporation in which the stock is held in a few hands, or in a few families, and wherein it is not all, or only rarely, dealt in buying and selling.'" John K. Gray, "Proving the Value of Goodwill of a Spouse's Closely–Held Commercial Corporation in a Divorce Proceed-

ing," 25 J. Fam. L. 549, 550 (1986) (quoting *Lavene v. Lavene,* 162 N.J.Super. 187, 392 A.2d 621, 623 (1978)). In valuing the assets of a closely-held corporation courts generally agree that "[g]oodwill is a recognized tangible asset of a corporation and should be considered when valuing a closely held corporation for the division of marital assets." *In re Marriage of Brenner,* 235 Ill.App.3d 840, 176 Ill.Dec. 572, 601 N.E.2d 1270, 1275 (1992).

**7.** "The valuation of a professional business practice presents unique issues not encountered in conventional businesses. Generally, the professional practice's most valuable asset is its goodwill.... However, this value is more difficult to quantify." David H. Levy, "Hunting (Professional) Goodwill," 25–WTR Fam. Advoc. 31 (2003). *See Weaver v. Ritchie,* 197 W.Va. 690, 695 n. 13, 478 S.E.2d 363, 368 n. 13 (1996) (noting in passing that "[G]oodwill is generally not associated to such a great extent in the sale of a professional practice[.]").

**8.** By "sole practitioner" we mean that no other dentist was employed in any capacity by Dr. May's dental practice. Dr. May employed three people on a part-time basis: a receptionist, a dental hygienist and a dental assistant.

**9.** Some examples of businesses that fall under the heading of professional practice include a law practice, dental practice, accounting practice and medical practice.

May's dental practice for the purpose of equitable distribution.

### A. General Definition of Goodwill

■ Goodwill may be defined generally as

> [T]he advantage or benefit, which is acquired by an establishment, beyond the mere value of the ·capital stock, funds, or property employed therein, in consequence of general public patronage and encouragement, which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.

*McDiarmid v. McDiarmid,* 649 A.2d 810, 813 (D.C.App.1994) (citations omitted). *See also Yoon v. Yoon,* 711 N.E.2d 1265, 1268 (Ind. 1999) (defining goodwill "as the value of a business or practice that exceeds the combined value of the net assets used in the business"). Essentially, goodwill is " 'the favor which the management of a business has won from the public, and probability that old customers will continue their patronage.' " *Gaydos v. Gaydos,* 693 A.2d 1368, 1372 (Pa.Super.1997) (quoting *Ullom v. Ullom,* 384 Pa.Super. 514, 559 A.2d 555, 558–59 (1989)). Further, marketable "[g]oodwill associated with a business is an asset distributable upon dissolution of a marriage." *Seiler v. Seiler,*

308 N.J.Super. 474, 706 A.2d 249, 251 (1998) (citation omitted). However, "[w]here no market exists for goodwill, it should be considered to have no value." *Manelick v. Manelick,* 59 P.3d 259, 265 (Alaska 2002).

### B. Goodwill in Divorce Litigation: Enterprise and Professional

Essentially, there are two types of goodwill recognized by courts in divorce litigation: enterprise goodwill (also called commercial or professional goodwill) and personal goodwill (also called professional goodwill).[10] A good working definition of enterprise goodwill is:

> Enterprise goodwill attaches to a business entity and is associated separately from the reputation of the owners. Product names, business locations, and skilled labor forces are common examples of enterprise goodwill. The asset has a determinable value because the enterprise goodwill of an ongoing business will transfer upon sale of the business to a willing buyer.

Courtney E. Beebe, "The Object of My Appraisal: Idaho's Approach to Valuing Goodwill as Community Property in *Chandler v. Chandler,*" 39 Idaho L.Rev. 77, 83–84 (2002). *See also Frazier v. Frazier,* 737 N.E.2d 1220, 1225 (Ind.App.2000) ("Enterprise goodwill is based on the intangible, but generally marketable, existence in a business of established relations with employees, customers and sup-

---

**10.** Courts have recognized that "the burden is on the party who seeks to establish goodwill as a marital asset to produce convincing proof delineating between [enterprise] goodwill on the one hand and personal goodwill on the other." *Williams v. Williams,* 108 S.W.3d 629, 642 (Ark. App.2003). For a general discussion of enterprise goodwill and personal goodwill see Alicia Brokars Kelly, "Sharing a Piece of the Future Post–Divorce: Toward a More Equitable Distribution of Professional Goodwill," 51 Rutgers L.Rev. 569 (1999). In an article by Helga White "Professional Goodwill": Is it a Settled Question or Is There 'Value' in Discussing It?," 15 J. Am. Acad. Matrim. Law. 495 (1998), the author carves out subtle distinctions between enterprise goodwill, commercial goodwill, professional goodwill and personal goodwill (distinctions that are different from those mentioned in the body of this opinion). In making these distinctions, White notes that "a definition of professional goodwill may span all the categories [of good-

will]. In fact, a hard and fast distinction between commercial goodwill and professional goodwill may actually be misleading." *White,* "Professional Goodwill, 15 J. Am. Acad. Matrim. Law at 500. Although we appreciate the subtle distinctions White makes in her article, we have found no judicial opinion setting out such distinctions. The reason is simple. The distinctions elevate form over substance and do not affect the ultimate outcome in a goodwill analysis.· By way of illustration, during the testimony of Mrs. May's accounting expert, the expert stated that he was not familiar with the term "enterprise" goodwill, but that he was familiar with the term "professional" goodwill. The expert's working definition of professional goodwill was, in fact, the working definition of enterprise goodwill. In the final analysis, we believe that to judicially recognize the distinctions White makes in her article would only convolute an already complex area of marital property law.

pliers, and may include a business location, its name recognition and its business reputation."). Personal goodwill has been described as follows:

[P]ersonal goodwill is associated with individuals. It is that part of increased earning capacity that results from the reputation, knowledge and skills of individual people. Accordingly, the goodwill of a service business, such as a professional practice, consists largely of personal goodwill.

Diane Green Smith, " 'Til Success Do Us Part: How Illinois Promotes Inequities in Property Distribution Pursuant to Divorce by Excluding Professional Goodwill," 26 J.

11. Our research revealed that the following jurisdictions have not squarely decided the issue of whether personal goodwill or enterprise goodwill of a professional practice constitutes marital property: Alabama, Georgia, Idaho, Iowa, Maine, and Vermont. In Ohio, the state Supreme Court has not addressed the issue. Consequently, there appears to be an unresolved split of authority among the Ohio appellate court districts. One appellate court district has held that personal goodwill and enterprise goodwill in a professional practice constitute marital property. *See Kahn v. Kahn*, 42 Ohio App.3d 61, 536 N.E.2d 678 (1987) (medical practice). Another appellate court district has ruled that personal goodwill is not marital property. *See Goswami v. Goswami*, 152 Ohio App.3d 151, 787 N.E.2d 26 (2003) (medical practice). Additionally, in *Endres v. Endres*, 532 N.W.2d 65 (S.D.1995), the South Dakota Supreme Court found that enterprise goodwill in a professional practice is marital property, but expressly declined to decide whether personal goodwill in a professional practice is marital property.

12. In Mrs. May's brief, she contends that this Court adopted North Carolina's position on goodwill in *Tankersley v. Tankersley*, 182 W.Va. 627, 390 S.E.2d 826 (1990). Mrs. May has misread *Tankersley*.

In *Tankersley*, the husband filed for and was granted a divorce from his wife. One of the property issues resolved by the circuit court involved a funeral home that was owned by the husband. The *Tankersley* opinion characterized the funeral home as a closely-held corporation. The trial court concluded that the funeral home was marital property and had a market value of $325,000.00. The husband appealed the trial court's ruling on the value of the funeral home. In the appeal, the husband argued that the trial court erred in deducting only one debt from the market value of the business. It was the husband's position that the court should have deducted all the debts of the business to determine its net value.

Marshall L.Rev. 147, 164–65 (1992). As discussed later in this opinion, the goodwill calculated by Mrs. May's expert was personal goodwill.

## C. Jurisdictional Consideration of Goodwill as Marital Property

There is a split of authority on whether enterprise goodwill and/or personal goodwill in a professional practice may be characterized as marital property and thus equitably distributed. Three different approaches have developed.[11] We will review each approach before determining the rule of law we now adopt in West Virginia.[12]

In addressing the issue of valuing a closely-held corporation, this Court made the following observation:

Commonly, the purchase of a closely held corporation occurs in one of two ways. Where the purchaser acquires the stock of the corporation, he ordinarily acquires all of the corporation's assets and liabilities. In this situation, the amount paid to the owner-seller for his stock ordinarily represents the net value of the business because the owner-seller is not obligated to pay off the corporate debts.

The second method of purchasing a corporation or business is where the buyer acquires its assets. Under this arrangement, the market value does not equal the net value because the owner-seller will ordinarily be responsible for some or all of the business's debts or liabilities. Again, the pertinent inquiry is what is the net sum that will be realized by the owner of the business if it is sold for its fair market value.

*Tankersley*, 182 W.Va. at 631, 390 S.E.2d at 830. The decision further held:

[T]he net value of a closely held corporation or business equals the net amount realized by the owner should the corporation or business be sold for its fair market value. The pertinent inquiry that must be made is whether the owner-seller will be responsible for the debts of the corporation or business, assuming a sale for its market value.

*Tankersley*, 182 W.Va. at 631, 390 S.E.2d at 830. Ultimately, the decision reversed and remanded the case for further consideration of the valuation of the funeral business.

In making its pronouncement on how to value a closely-held corporation, the decision in *Tankersley* cited in passing to a North Carolina decision that included consideration of goodwill in valuing a closely-held corporation. *Tankersley* also quoted Revenue Ruling 59–60, 1959–1 C.B. 237, 238, which lists goodwill as one of eight factors that should be analyzed in valuing the stock of a closely-held corporation for federal gift and estate taxes. However, since the issue of goodwill was not directly before the Court in *Tankersley* there was no definitive position taken by the Court. In fact, in no decision has this

**1. No Distinction.** A large number of courts (13) *make no distinction* between personal and enterprise goodwill. These jurisdictions have taken the position that both personal and enterprise goodwill in a professional practice constitute marital property.[13] A case which best illustrates this position is *Poore v. Poore*, 75 N.C.App. 414, 331 S.E.2d 266 (1985).

In *Poore*, the wife sued for divorce from her husband. The husband was a dentist and the sole owner and operator of an incorporated dental practice. At the trial level, the husband produced expert evidence as to the value of his dental practice. The husband's expert opined that the practice had a net value of $7,549.00 and had no goodwill. The wife's expert contended that the dental practice had a value of $232,000.00, which included a value for personal goodwill.[14] The trial court rejected the evidence by both experts and found that the dental practice had a value of $73,561.00. The trial court also found that the dental practice had no goodwill. Both parties appealed. An issue on appeal that is relevant to this case involved the wife's contention that the dental practice had goodwill.

In addressing the issue of valuing a professional practice in general, the court in *Poore* made the following observations:

> The valuation of each individual practice will depend on its particular facts and circumstances. In valuing a professional practice, a court should consider the following components of the practice: (a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in progress; (c) its goodwill, if any; and (d) its liabilities. Among the valuation approaches courts may find helpful are: (1) an earnings or market approach, which bases the value of the practice on its market value, or the price which an outside buyer would pay for it taking into account its future earning capacity; and (2) a comparable sales approach which bases the value of the practice on sales of similar businesses or practices. Courts might also consider evidence of offers to buy or sell the particular practice or an interest therein.

*Poore*, 331 S.E.2d at 270 (citations omitted). Turning to the issue of valuing goodwill in a professional practice, the *Poore* Court stated:

> The component of a professional practice which is the most controversial and difficult to value, and yet often the most valuable, is its goodwill. Goodwill is commonly defined as the expectation of continued public patronage. It is an intangible asset which defies precise definition and valuation. It is clear, however, that goodwill exists, that it has value, and that it has limited marketability.
>
> . . . .

Court meaningfully examined the issue of goodwill in a business in the context of a divorce. *See Stevens v. Stevens*, 202 W.Va. 611, 613 n. 4, 505 S.E.2d 674, 676 n. 4 (1998) (per curiam) (a divorce case in which it was noted in passing that goodwill was included in valuation of a funeral business); *Signorelli v. Signorelli*, 189 W.Va. 710, 714 n. 2, 434 S.E.2d 382, 386 n. 2 (1993) (per curiam) (same); *Kimble v. Kimble*, 186 W.Va. 147, 411 S.E.2d 472 (1991) (per curiam) (affirming, without any meaningful discussion, a family law master's determination that a funeral business had $6,000.00 in goodwill); *Bettinger v. Bettinger*, 183 W.Va. 528, 532, 396 S.E.2d 709, 713 (1990) (mentioning in passing that the husband's interest in a medical corporation had no goodwill).

P.2d 244 (Colo.1992) (law practice); *Heller v. Heller*, 672 S.W.2d 945 (Ky.App.1984) (accounting practice); *Kowalesky v. Kowalesky*, 148 Mich. App. 151, 384 N.W.2d 112 (1986) (dental practice); *In re Marriage of Stufft*, 286 Mont. 239, 950 P.2d 1373 (1997) (law practice); *Ford v. Ford*, 105 Nev. 672, 782 P.2d 1304 (1989) (medical practice); *Dugan v. Dugan*, 92 N.J. 423, 457 A.2d 1 (1983) (law practice); *Moll v. Moll*, 187 Misc.2d 770, 722 N.Y.S.2d 732 (2001) (stockbroker); *Poore v. Poore*, 75 N.C.App. 414, 331 S.E.2d 266 (1985) (dental practice); *Mitchell v. Mitchell*, 104 N.M. 205, 719 P.2d 432 (App.1986) (accounting practice); *Sommers v. Sommers*, 660 N.W.2d 586 (N.D.2003) (medical practice); *In re Marriage of Hall*, 103 Wash.2d 236, 692 P.2d 175 (1984) (medical practice).

**13.** *See Wisner v. Wisner*, 129 Ariz. 333, 631 P.2d 115 (App.1981) (medical practice); *In re Foster*, 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974) (medical practice); *In re Marriage of Huff*, 834

**14.** The opinion does not characterize the goodwill as personal goodwill, but all of the factors relied upon by the wife's expert are personal goodwill factors.

There is no set rule for determining the value of the goodwill of a professional practice; rather, each case must be determined in light of its own particular facts. The determination of the existence and value of goodwill is a question of fact and not of law, and should be made with the aid of expert testimony.... Among the factors which may affect the value of goodwill and which therefore are relevant in valuing it are the age, health, and professional reputation of the practitioner, the nature of the practice, the length of time the practice has been in existence, its past profits, its comparative professional success, and the value of its other assets.

Various appraisal methods can be and have been used to value goodwill. Any legitimate method of valuation that measures the present value of goodwill by taking into account past results, and not the postmarital efforts of the professional spouse, is a proper method of valuing goodwill. One method that has been widely accepted in other jurisdictions is to determine the market value of the goodwill, i.e., the price that a willing buyer would pay to a willing seller for it. Another method that has been received favorabl[y] is a capitalization of excess earnings approach.... Under this approach, the value of goodwill is based in part on the amount by which the earnings of the professional spouse exceed that which would have been earned by a person with similar education, experience, and skill as an employee in the same general locale. It has also been suggested that the value of goodwill be based on one year's average gross income of the practice, or a percentage thereof, and that evidence of sales of comparable practices is relevant to the determination of its value.

*Poore*, 331 S.E.2d at 271–72 (citations omitted). The court in *Poore* reversed the trial court's ruling on the issue of the value of the dental practice and remanded the matter for reconsideration of the goodwill issue consistent with its opinion.

**15.** *See Powell v. Powell*, 231 Kan. 456, 648 P.2d 218 (1982) (medical practice); *Chance v. Chance*, 694 So.2d 613 (La.App.1997) (medical practice); *Singley v. Singley*, 846 So.2d 1004 (Miss.2002)

The underlying rationale for the position taken by *Poore* and the courts that follow its position was succinctly stated in *Golden v. Golden*, 270 Cal.App.2d 401, 75 Cal.Rptr. 735 (1969):

[I]n a divorce case, the good will of the husband's professional practice as a sole practitioner should be taken into consideration in determining the award to the wife.... [I]n a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business.

*Golden*, 75 Cal.Rptr. at 737–38. *See also In re Marriage of Nichols*, 43 Colo.App. 383, 606 P.2d 1314, 1315 (1979) ("A professional, like any entrepreneur who has established a reputation for skill and expertise, can expect his patrons to return to him, to speak well of him, and upon selling his practice, can expect that many will accept the buyer and will utilize his professional expertise. These expectations are a part of goodwill, and they have a pecuniary value.").

2. **Minority View.** On the other hand, a minority of courts (5) have taken the position that neither personal nor enterprise goodwill in a professional practice constitutes marital property.[15] The case which best illustrates the position taken by these courts is *Singley v. Singley*, 846 So.2d 1004 (Miss.2002).

In *Singley*, the husband, who maintained a solo dental practice, filed for divorce. During the proceedings, an expert, appointed by the court, valued the husband's dental practice at $145,000.00. The valuation included goodwill. The trial court refused to admit evidence of the husband's expert on the issue of the value of his dental practice. The trial

(dental practice); *Donahue v. Donahue*, 299 S.C. 353, 384 S.E.2d 741 (1989) (dental practice); *Smith v. Smith*, 709 S.W.2d 588 (Tenn.Ct.App. 1985) (law firm).

court thereafter equitably divided the value of the dental practice. The husband appealed to the state's mid-level appellate court arguing, among other things, that goodwill should not have been included in the valuation of his dental practice. The appellate court disagreed and affirmed the trial court's ruling. The husband thereafter appealed to the state Supreme Court.

Addressing the issue of assigning goodwill to a professional practice in a divorce case, the *Singley* court noted initially that:

> The issue of goodwill in the context of distribution in a divorce action is indeed one of first impression.... [R]ecently by footnote in *Mace v. Mace*, 818 So.2d 1130, 1133 n. 3 (Miss.2002), this Court stated that "the opinions of other jurisdictions are split regarding whether goodwill may be considered in valuing a professional practice and, if so, how good will is to be calculated."

*Singley*, 846 So.2d at 1010. The opinion in *Singley* further held:

> We disagree with the Court of Appeals that goodwill may be included in the valuation of a business when the issue of that valuation concerns distribution in a divorce action. We join the jurisdictions that adhere to the principle that goodwill should not be used in determining the fair market value of a business, subject to equitable division in divorce cases.

*Singley*, 846 So.2d at 1010. The *Singley* court gave the following justification for its determination that goodwill in a professional practice is not marital property:

> The term goodwill as used in determining valuation of a business for equitable distribution in a domestic matter is a rather nebulous term clearly illustrating the difficulty confronting experts in arriving at a fair, proper valuation. Goodwill within a business depends on the continued presence of the particular professional individual as a personal asset and any value that may attach to that business as a result of that person's presence. Thus, it is a value that exceeds the value of the physical building housing the business and the fixtures within the business. It becomes increasingly difficult for experts to place a value on goodwill because it is such a nebulous term subject to change on a moment's notice due to many various factors which may suddenly occur, i.e., a lawsuit filed against the individual or the death and/or serious illness of the individual concerned preventing that person from continuing to participate in the business. It is also difficult to attribute the goodwill of the individual personally to the business. The difficulty is resolved however when we recognize that goodwill is simply not property; thus it cannot be deemed a divisible marital asset in a divorce action.

*Singley*, 846 So.2d at 1011. *See also Chance v. Chance*, 694 So.2d 613, 617 (La.App.1997) ("It is well-settled that goodwill does not form a part of the corporate assets of a medical practice in that the goodwill results from the physician's professional medical competence and his relationship with patients, not from any affiliation between the corporation and the patient.").

3. **Majority View.** "[T]he majority of states [24] differentiate between 'enterprise goodwill,' ... and 'personal goodwill[.]'" *Gilman v. Hohman*, 725 N.E.2d 425, 429 (Ind.App.2000). Courts in these states take the position that personal goodwill is not marital property, but that enterprise goodwill is marital property.[16] One of the leading

16. *See Richmond v. Richmond*, 779 P.2d 1211 (Alaska 1989) (law practice); *Tortorich v. Tortorich*, 50 Ark.App. 114, 902 S.W.2d 247 (1995) (dental practice); *Eslami v. Eslami*, 218 Conn. 801, 591 A.2d 411 (1991) (medical practice); *E.E.C. v. E.J.C.*, 457 A.2d 688 (Del.1983) (law practice); *McDiarmid v. McDiarmid*, 649 A.2d 810 (D.C.App.1994) (law practice); *Thompson v. Thompson*, 576 So.2d 267 (Fla.1991) (law practice); *Antolik v. Harvey*, 7 Haw.App. 313, 761 P.2d 305 (1988) (chiropractic business); *In re Marriage of Head*, 273 Ill.App.3d 404, 210 Ill. Dec. 270, 652 N.E.2d 1246 (1995) (medical prac-

tice); *Yoon v. Yoon*, 711 N.E.2d 1265 (Ind.1999) (medical practice); *Prahinski v. Prahinski*, 75 Md.App. 113, 540 A.2d 833 (1988) (law practice); *Goldman v. Goldman*, 28 Mass.App.Ct. 603, 554 N.E.2d 860 (1990) (medical practice); *Roth v. Roth*, 406 N.W.2d 77 (Minn.App.1987) (chiropractic business); *Hanson v. Hanson*, 738 S.W.2d 429 (Mo.1987) (medical practice); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986) (medical practice); *In re Watterworth*, 821 A.2d 1107 (N.H.2003) (medical practice); *Travis v. Travis*, 795 P.2d 96 (Okla.1990) (law practice);

cases discussing and adopting the distinction between personal goodwill and enterprise goodwill is the decision in *Yoon v. Yoon*, 711 N.E.2d 1265 (Ind.1999).

In *Yoon*, the wife was granted a divorce from her husband. In granting the divorce the trial court assigned a value of $2,519,366.00 to the husband's medical practice. This figure included a value for goodwill. The husband appealed to a mid-level appellate court. There, the valuation was upheld. The husband then appealed to the state Supreme Court. In addressing the issue of goodwill, the Indiana Supreme Court stated:

> Goodwill has been described as the value of a business or practice that exceeds the combined value of the net assets used in the business. Goodwill in a professional practice may be attributable to the business enterprise itself by virtue of its existing arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business. It may also be attributable to the individual owner's personal skill, training or reputation. This distinction is sometimes reflected in the use of the term "enterprise goodwill," as opposed to "personal goodwill."

> Enterprise goodwill is an asset of the business and accordingly is property that is divisible in a dissolution to the extent that it inheres in the business, independent of any single individual's personal efforts and will outlast any person's involvement in the business. It is not necessarily marketable in the sense that there is a ready and easily priced market for it, but it is in general transferrable to others and has a value to others.

> . . . .

> In contrast, the goodwill that depends on the continued presence of a particular individual is a personal asset, and any value that attaches to a business as a result of

this "personal goodwill" represents nothing more than the future earning capacity of the individual and is not divisible. Professional goodwill as a divisible marital asset has received a variety of treatments in different jurisdictions, some distinguishing divisible enterprise goodwill from nondivisible personal goodwill and some not.

> Accordingly, we join the states that exclude goodwill based on the personal attributes of the individual from the marital estate.

> [B]efore including the goodwill of a self-employed business or professional practice in a marital estate, a court must determine that the goodwill is attributable to the business as opposed to the owner as an individual. If attributable to the individual, it is not a divisible asset and is properly considered only as future earning capacity that may affect the relative property division.

*Yoon*, 711 N.E.2d at 1268–69 (citations omitted). *See* Syl. pt. 2, *Antolik v. Harvey*, 7 Haw.App. 313, 761 P.2d 305 (1988) ("In determining whether the goodwill of the business of a professional that is accumulated during the marriage is marital property, a distinction must be made between true goodwill which is a marketable business asset and the goodwill which is dependent on the voluntary continued presence of the professional. The former is marital property, while the latter is not."); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851, 858 (1986) ("[I]f goodwill depends on the continued presence of a particular individual, such goodwill, by definition, is not a marketable asset distinct from the individual. Any value which attaches to the entity solely as a result of personal goodwill represents nothing more than probable future earning capacity, which although relevant in determining alimony, is not a proper consideration in dividing marital property in a dissolution proceeding."); *Butler v. Butler*, 541 Pa. 364, 663 A.2d 148, 156 (1995)

*Matter of Marriage of Maxwell*, 128 Or.App. 565, 876 P.2d 811 (1994) (self-employed advertising copywriter); *Butler v. Butler*, 541 Pa. 364, 663 A.2d 148 (1995) (accounting firm); *Moretti v. Moretti*, 766 A.2d 925 (R.I.2001) (professional landscaper); *Guzman v. Guzman*, 827 S.W.2d 445 (Tex.App.1992) (accounting firm); *Sorensen*

*v. Sorensen*, 839 P.2d 774 (Utah 1992) (law practice); *Howell v. Howell*, 31 Va.App. 332, 523 S.E.2d 514 (2000) (law practice); *Peerenboom v. Peerenboom*, 147 Wis.2d 547, 433 N.W.2d 282 (App.1988) (dental practice); *Root v. Root*, 65 P.3d 41 (Wyo.2003) (medical practice).

("[W]here there has been an award of alimony, . . . to also attribute a value to goodwill that is wholly personal to the professional spouse, would in essence result in a double charge on future income."). Insofar as the trial court adopted a business valuation in *Yoon* that did not distinguish between personal goodwill and enterprise goodwill, the Indiana Supreme Court reversed and remanded the issue for disposition consistent with its opinion.

■ 4. West Virginia. In our examination of the three views on the issue of goodwill in a professional practice, we believe the majority view represents the soundest legal approach. Therefore, we hold that "enterprise goodwill" is an asset of the business and may be attributed to a business by virtue of its existing arrangements with suppliers, customers or others, and its anticipated future customer base due to factors attributable to the business. Additionally, we hold that "personal goodwill" is a personal asset that depends on the continued presence of a particular individual and may be attributed to the individual owner's personal skill, training or reputation.

■ Furthermore, we hold that in determining whether goodwill should be valued for purposes of equitable distribution, courts must look to the precise nature of that goodwill. Personal goodwill, which is intrinsically tied to the attributes and/or skills of an individual, is not subject to equitable distribution. It is not a divisible asset. It is more properly considered as the individual's earning capacity that may affect property division and alimony. On the other hand, enterprise goodwill, which is wholly attributable to the business itself, is subject to equitable distribution.

The position adopted by this Court, in holding that personal goodwill is not marital property, is consistent with our holding in Syllabus point 1 of *Hoak v. Hoak*, 179 W.Va.

509, 370 S.E.2d 473 (1988), wherein we held that "[a] professional degree or license earned during marriage is not marital property subject to equitable distribution."[17] Our marital property law would be in disarray were we to adhere to the holding in *Hoak*, that a professional degree was not a marital asset, yet, conclude that personal goodwill was a marital asset. In *Sorensen v. Sorensen*, 839 P.2d 774, 776 (Utah 1992), the Utah Supreme Court recognized that a professional degree and personal goodwill could not be treated differently in a divorce action. *Sorensen* addressed the issue as follows:

> The reputation of a sole practitioner is personal, as is a professional degree. Both enhance the professional's earning capacity. The combination of the degree and the practitioner's reputation enables him or her to earn in many cases a substantial income, the fruits of which are shared by the children in the form of child support and by the former spouse in the form of alimony.

*Sorensen*, 839 P.2d at 776.

In the final analysis, *Hoak* recognized that a professional degree is "personal" to the holder and could not be separated from the holder as a marital asset. Similarly, personal goodwill is an asset that cannot be divided from its holder. This point was echoed in *Strauss v. Strauss*, 101 Md.App. 490, 647 A.2d 818, 824 (1994), wherein the court observed that "[a]ssets that are 'uniquely personal' to the holder cannot, by their very nature, be held jointly with another person and, consequently, cannot be classified as marital property."

### D. Valuation of Goodwill

■ Finally, once a professional practice has been determined to possess distributable goodwill, a value must be placed thereon. "[T]here are a variety of acceptable methods of valuing the goodwill of a professional prac-

---

17. We justified our holding in *Hoak* as follows:
[T]he value of a professional degree is the value of the enhanced earning capacity of the degree-holder. Not only is that value speculative, but also it represents money or assets earned after dissolution of the marriage. As such, it falls outside our statutory definition of marital property. . . .

> On the whole, a degree of any kind results primarily from the efforts of the student who earns it. Financial and emotional support are important, as are homemaker services, but they bear no logical relation to the value of the resulting degree.

*Hoak*, 179 W.Va. at 512–13, 370 S.E.2d at 477.

tice, and no single method is to be preferred as a matter of law." *McDiarmid v. McDiarmid*, 649 A.2d 810, 815 (D.C.App.1994). *Accord Russell v. Russell*, 11 Va.App. 411, 399 S.E.2d 166, 169 (1990) ("[T]here are a number of acceptable methods of computing the goodwill value of a professional practice, and ... no single method is to be preferred as a matter of law."). The Court in *In re Marriage of Hall*, 103 Wash.2d 236, 692 P.2d 175, 179 (1984), pointed out that "[i]n valuing goodwill five major formulas have been articulated." *Hall* discussed the valuation methods as follows:

> Under the straight capitalization accounting method the average net profits of the practitioner are determined and this figure is capitalized at a definite rate, as, for example, 20 percent. This result is considered to be the total value of the business including both tangible and intangible assets. To determine the value of goodwill the book value of the business' assets are subtracted from the total value figure.
>
> The second accounting formula is the capitalization of excess earnings method. Under the pure capitalization of excess earnings the average net income is determined. From this figure an annual salary of average employee practitioner with like experience is subtracted. The remaining amount is multiplied by a fixed capitalization rate to determine the goodwill.[18]

The IRS variation of capitalized excess earnings method takes the average net income of the business for the last 5 years and subtracts a reasonable rate of return based on the business' average net tangible assets. From this amount a comparable net salary is subtracted. Finally, this remaining amount is capitalized at a definite rate. The resulting amount is goodwill.[19]

The fourth method, the market value approach, sets a value on professional goodwill by establishing what fair price would be obtained in the current open market if the practice were to be sold. This method necessitates that a professional practice has been recently sold, is in the process of being sold or is the subject of a recent offer to purchase. Otherwise, the value may be manipulated by the professional spouse.

The fifth valuation method, the buy/sell agreement method, values goodwill by reliance on a recent actual sale or an unexercised existing option or contractual formula set forth in a partnership agreement or corporate agreement. Since the professional spouse may have been influenced by many factors other than fair market value in negotiating the terms of the agreement, courts relying on this method should inquire into the presence of such factors, as well as the arm's length nature of the transaction.[20]

---

**18.** "The most commonly relied upon approach for valuing professional practices is the capitalization of excess earnings approach. Goodwill is excess earning power: once the normal rate of return for identifiable tangible and intangible assets is determined, any rate of return in excess of a normal return is attributable to unidentifiable intangible assets-goodwill." Alicia Brokars Kelly, "Sharing a Piece of the Future Post–Divorce: Toward a More Equitable Distribution of Professional Goodwill," 51 Rutgers L.Rev. 569, 610 (1999). *See also* Alan S. Zipp, "Divorce Valuation of Business Interests: A Capitalization of Earnings Approach," 23 Fam. L.Q. 89 (1989) (discussing capitalization of excess earnings approach).

**19.** The IRS method (also called the formula approach) is found in Revenue Ruling 68–609, and reads as follows:

A percentage return on the average annual value of the tangible assets used in a business is determined, using a period of years (prefera-

bly not less than five) immediately prior to the valuation date. The amount of the percentage return on tangible assets, thus determined, is deducted from the average earnings of the business for such period and the remainder, if any, is considered to be the amount of the average annual earnings from the intangible assets of the business for the period. This amount (considered as the average annual earnings from intangibles), capitalized at a percentage of, say, 15 to 20 percent, is the value of the intangible assets of the business determined under the 'formula' approach. Rev. Rul. 68–609 (1968).

**20.** This Court observed in *Bettinger v. Bettinger*, 183 W.Va. 528, 534, 396 S.E.2d 709, 715 (1990), "that buy-sell agreements in a closely held corporation can be manipulated by the shareholders to reflect an artificially low value. This is why caution should be exercised in accepting their value for equitable distribution purposes."

*Hall,* 692 P.2d at 178–80 (footnotes added). *Accord Moffitt v. Moffitt,* 749 P.2d 343, 348 (Alaska 1988) (referencing all five methods); *Hanson v. Hanson,* 738 S.W.2d 429, 435–36 (Mo.1987) (discussing all five methods). *See also McAffee v. McAffee,* 132 Idaho 281, 971 P.2d 734, 740 (App.1999) (discussing straight capitalization and capitalization of excess earnings); *Skrabak v. Skrabak,* 108 Md.App. 633, 673 A.2d 732, 736–38 (1996) (discussing capitalization of excess earnings).

■ It has been correctly noted that "[o]n appeal, if it appears that the trial court reasonably approximated the net value of the practice and its goodwill, if any, based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed." *Conway v. Conway,* 131 N.C.App. 609, 508 S.E.2d 812, 818 (1988). *Accord Russell v. Russell,* 11 Va.App. 411, 399 S.E.2d 166, 169 (1990) ("[O]n appeal, the trial court's valuation of goodwill will not be disturbed if it appears that the court made a reasonable approximation of the goodwill value, if any, of the professional practice based on competent evidence and the use of a sound method supported by that evidence.").

### E. Resolution of Instant Appeal

■ In the instant proceeding, Mrs. May's expert placed a fair market value on the dental practice at $120,000.00, which included a value of $80,568.00 for goodwill. It appears Mrs. May's expert used the IRS variation of capitalized excess earnings method to calculate a value for goodwill in Dr. May's dental practice.[21] The family court judge adopted the valuation by Mrs. May's expert.[22] For the reasons set forth herein,

21. The overall fair market value of the dental practice was determined by using five valuation methods: excess earnings method, capitalization of income, discounted future cashflow method, comparable market method, and revenue multiplier method. However, from our review of the record it appears that the goodwill assigned to the dental practice was taken directly from the valuation obtained from the excess earnings method.

22. We take this opportunity to address some concerns we have about the valuation by Dr. May's expert. Dr. May's expert provided a fair market value of the practice of $55,000.00. The record is conflicting regarding that valuation. In its findings of fact, the family court judge found that the valuation by Dr. May's expert "did not include a designated value for goodwill and included a twenty percent (20%) reduction for 'lack of marketability.'" The family court judge rejected the valuation of $55,000.00 given by Dr. May's expert "due to the use of the twenty percent (20%) 'lack of marketability' reduction and the failure to specifically reflect a calculable goodwill analysis." However, the record in this case does not support the family law judge's conclusion that Dr. May's expert did not include goodwill in the valuation. The report generated by Dr. May's expert lists $21,000.00 as the value for enterprise goodwill. During his testimony, Dr. May's expert confirmed this point as follows:

> Q. This $55,000 figure that you came up with, does that include a value for goodwill?
> A. It includes a value for the intangibles that we listed at $21,000.
> Q. And it would include those $21,000 of intangibles or what you had listed as enterprise goodwill as opposed to [personal] goodwill?
> A. Right.

> Q. So then you actually have a calculation in here of the enterprise goodwill of this practice?
> A. Yes.

We are troubled by the family court judge's finding that Dr. May's expert did not provide a value for goodwill, and a statement in Dr. May's brief that his expert "concluded there was no goodwill in [the] dental practice[.]" In fact, the record appears to contradict both the family law judge and Dr. May on this point. Because this issue has not been presented to us, we need not determine whether the factors used by Dr. May's expert to determine enterprise goodwill were valid considerations. However, we will point out that "enterprise goodwill may exist in a sole proprietorship." *Gaydos v. Gaydos,* 693 A.2d 1368, 1373 (Pa.Super.1997).

Insofar as the family court judge rejected the valuation report by Dr. May's expert, we agree with this ruling, but not with the reason provided. *See* Syl. pt. 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965) ("This Court may, on appeal, affirm the [ruling] of the lower court when it appears that such [ruling] is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its [ruling]."). A discount for lack of marketability occurs when there is evidence that a business will receive less than its true value in a sale for any number of reasons. *See Rattee v. Rattee,* 146 N.H. 44, 767 A.2d 415, 420 (2001) (pointing out that a lack of marketability "discount accounts for the fact that the lack of a ready market for [a business] makes it a less attractive investment to a prospective purchaser"). The family court judge rejected the 20% discount for lack of marketability, on the grounds that there was no evidence that the practice would actually be sold. To accept this reasoning as a basis for rejecting the 20% discount would make such discounts inappropriate

we find that the family court judge erred in adopting the goodwill portion of the report compiled by Mrs. May's expert.

During one of the hearings in this matter, Mrs. May's expert gave the following testimony regarding the nature of the goodwill assigned to the dental practice: [23]

Q. Well, did you include [enterprise] goodwill—

A. In that value of Dr. May's practice what I included was the personal goodwill of Dr. May.

. . . .

Q. What is enterprise goodwill?

. . . .

A. [Enterprise] goodwill is that goodwill which is tied and associated with the goodwill of the total practice itself. [Enterprise] goodwill normally must be involved with more than one practitioner in the office—in the practice.

Q. How does that apply to Dr. May? Isn't he a solo practitioner?

A. He has only personal goodwill, he has no [enterprise] goodwill.

Q. But you included personal goodwill in your evaluation?

A. I did, that is correct.

Q. And is not personal goodwill the attributes and/or skills of a person?

A. Personal goodwill?

Q. Yes.

A. It is definitely tied into the professional himself, the doctor.

Q. It's the intangibles that go along with Hillman May in this case itself; is that right?

A. I am sorry, what?

Q. It was not very clear. I can understand why you didn't understand it. Personal goodwill would be completely and totally tied to Dr. May, to Hillman May himself?

A. Correct.

Q. If he walked out the door and finished practicing tomorrow, that value of goodwill would be gone?

A. It would stay with him.

Q. I'm sorry, it would be gone for the practice? I want to make that very clear.

A. Yes.

Q. And you think that personal goodwill is something appropriate, again, to valuation?

A. It's usually the highest single asset.

The above testimony makes clear that the $80,568.00 goodwill assigned to Dr. May's dental practice, by Mrs. May's expert, was personal goodwill. Insofar as we have declined to follow the jurisdictions that permit personal goodwill to be a marital asset, it was error for the family court judge to accept the personal goodwill valuation portion of the report issued by Mrs. May's expert.

## IV.

## CONCLUSION

Based upon the foregoing, we conclude that the family court judge correctly determined that the real estate in this case was marital property, subject to equitable distribution. We therefore affirm the family court's ruling as to the real estate. However, we find that the family court judge's adoption of the fair market value of the dental practice by Mrs. May's expert, which included a value for personal goodwill, was in

in all divorce cases. As a practical matter, business valuations in divorce cases will generally be done on the basis of a theoretical sale, as opposed to an actual sale. *See Michael v. Michael,* 196 W.Va. 155, 469 S.E.2d 14 (1996) (per curiam) (affirming a 25% reduction for lack of marketabilty in the theoretical sale of a closely-held corporation). Instead, we find that the 20% discount must be rejected because it was based merely upon an assumption by Dr. May's expert that the practice would be hard to sell and therefore its true value would not be realized in a sale. Unlike the decision in *Michael,* where the expert provided a factual basis for the discount, *i.e.,*

documented heavy debts, Dr. May's expert did not provide any evidentiary proof that the practice would be hard to sell and, therefore, that its true value would not be realized in a sale.

**23.** During such testimony, Mrs. May's expert referred to "enterprise" goodwill as "professional" goodwill. The expert was not familiar with the use of the term "enterprise" goodwill. For the sake of clarity in this opinion, we have inserted "enterprise" when the expert used the term "professional".

error. We therefore reverse the family court's ruling on this issue and remand the matter for a resolution that is consistent with this opinion.[24]

Affirmed, in part; Reversed, in part; and Remanded.

ALBRIGHT, Justice, concurring:

(Filed Nov. 10, 2003)

The majority tackles many tough aspects of domestic relations law not addressed by this Court since the principle of equitable distribution of marital property was first adopted in *LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983), which the Legislature later codified. As such, the opinion provides a useful road map not only for present application but also for future development of this area and thus deserves serious study and reflection by the Bar. To aid in this process, I write separately.

The majority builds on the still vital equitable distribution principle set forth in *Tankersley v. Tankersley,* 182 W.Va. 627, 390 S.E.2d 826 (1990): that the starting point for valuing a business is fair market value, with the net value of a business calculated by deducting the debts related to the business from the total market value. By recognizing goodwill as a component of the valuation process and a distinction between enterprise and personal goodwill to determining the distributable value of sole proprietorships, professional practices and, by extension, other non-corporate forms of business or practices such as partnerships, the majority has provided needed uniform direction for the lower courts. In time, this concept may eventually be extended to include closely-held corporations where one of the litigants is a major stockholder whose involvement in a business may represent a significant portion of overall goodwill. By defining and adopting a distinction between the intangible assets of "enterprise" and "personal" goodwill and providing that only enterprise goodwill is subject to equitable distribution, the majority has established a consistent foundation on which determinations regarding both equitable distribution and alimony can be made. As I indicated before, the benefits of this approach may well be extended to apply not only to sole proprietorships, professional practices and other non-corporate forms of business but also to closely-held corporations. Clearly, the categorization of goodwill decreases the likelihood that future earning capacity—personal goodwill—will be improperly considered as part of the valuation process while increasing the probability that it will be correctly factored into the determination of alimony.

The majority provides further helpful guidance by identifying five commonly used, but not exclusive, methods for valuing goodwill once it has been determined that a sole proprietorship, professional practice or non-corporate form of business possesses distributable goodwill. These methods include: straight capitalization accounting; capitalization of excess earnings; IRS variation of capitalized excess earnings; market value; and the buy/sell agreement. Admittedly, none of the methods provides a completely accurate measure of worth and no method is favored over another. Nonetheless, they should provide an adequate evidentiary basis for the lower court to reach its factual conclusion regarding an amount of distributable goodwill for business valuation purposes. However, as the majority clearly related, the parties and the experts in the case at hand were not using the same terminology with regard to goodwill, resulting in conclusions— and a record—which were indeed confusing. While trial courts have broad discretion in factual determinations, the record must show some reliable evidentiary basis for the factual conclusions in order to withstand appellate review. Courts and practitioners alike need to have a working knowledge of the valuation methods as well as of relevant accounting terms and definitions[1] so that their use is

---

**24.** The family court judge has discretion to decide whether additional evidence is required to determine the fair market value of the dental practice.

**1.** There are a number of publications which can serve to develop a working familiarity with business valuation terminology, including one published by the American Bar Association's Section of Family Law Publications Development Board

selectively and appropriately applied.[2] The definitions set forth in the opinion should, by supplying a standard, aid in reaching this end.

Two issues which I believe require further comment include the discount for lack of marketability and spousal contribution. While the majority did not find a discount for marketability appropriate in this case, the reason for doing so was not related to any one valuation method. Rather, this conclusion was reached because the recommendation was made on the factually unsupported assumption of Dr. May's expert that the practice would be hard to sell. Consequently, in my view such discounts are a viable tool in the valuation process when they are appropriate to the valuation method being employed and the circumstances, supported by documented evidence, so warrant.

As a point of clarification with regard to spousal contribution, the majority implies what *Hoak v. Hoak,* 179 W.Va. 509, 370 S.E.2d 473 (1988), explicitly decided: the contribution a spouse makes to the home during the time a person is earning a professional degree or by assisting in the establishment of a professional practice plays no part in determining the portion of a professional practice's value which is subject to equitable distribution. Rather, these contributions may be considered in appropriate circumstances for award of reimbursement alimony. *Id.* at Syl. pt. 2, 370 S.E.2d 473.

While I expect that this opinion will generate additional valuation concerns for this Court to address, the majority has made significant strides in this area of equitable distribution of marital property with which I unhesitatingly concur.

entitled *The Lawyer's Business Valuation Handbook* by Shannon Pratt (2000).

**2.** I simply note that the problem with inaccurate use of accounting terms appears to plague this area of law generally, as demonstrated in the opinion in quotes of courts from other jurisdictions which incorrectly categorize goodwill as a tangible asset and cash as a fixed asset.