680 S.E.2d 386

**Thomas D. CHENAULT, Respondent Below, Appellant,**

v.

**Sharron K. CHENAULT, Petitioner Below, Appellee.**

No. 34160.

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2008.

Decided June 22, 2009.

J. Roger Smith II, Huntington, WV, for Appellant.

Krista Conway, Huntington, WV, for Appellee.

PER CURIAM.

This case arises from a dispute over a series of Qualified Domestic Relations Orders issued by the Family Court of Cabell County. Because none of the orders accurately reflects the agreement of the parties, the orders must be reversed and this case remanded for entry of a proper Qualified Domestic Relations Order (hereinafter "QDRO") that correctly encompasses the ap-

pellee-wife's marital share of the appellant-husband's retirement benefits.

## I.

## FACTS

The appellant, Thomas D. Chenault, (hereinafter referred to as "Husband") and the appellee, Sharon K. Chenault, (hereinafter referred to as "Wife") were married on November 6, 1972. At the time of the marriage and continuing after the parties' divorce, the Husband was employed by the United States Government as a member of the United States Army Reserve and as a deputy United States Marshal. As such, the Husband made contributions to the Federal Employees Retirement System and Civil Service Investment Board both during the marriage and after the termination of the marriage.

The Husband and Wife separated on October 1, 1994. On March 25, 1996, the Circuit Court of Cabell County entered a bifurcated order that divorced the Husband and Wife and reserved resolution of the remaining issues of property distribution, spousal and child support for further hearing.

On June 15, 1996, a hearing was held before the Family Law Master[1] to resolve the remaining issues of property distribution, spousal support and child support. By order entered January 8, 1998, the Circuit Court of Cabell County found that the parties' pensions consisted of the Wife's West Virginia Consolidated Public Retirement Board pension and the Husband's federal civil service pension and his Army Reserve pension. The order further stated that "said pensions shall be subject to Qualified Domestic Relations Orders of Fifty Per Cent (50%) each" and that "the plaintiff [Wife] is hereby awarded one-half of the defendant [Husband]'s Civil Service pension and one-half of his Army

Reserve pension which shall be subject to Qualified Domestic [Relations] Orders."

For reasons not explained in the record, a significant period of time elapsed between the January 8, 1998, order defining the Wife's interest in the Husband's retirement and any attempt to complete that transaction. On June 1, 2006,[2] the Family Court entered an order designated as a QDRO. This order stated, *inter alia:*

Pursuant to the equitable distribution as ordered by the Court in the Final Decree of divorce, the Court hereby ORDERS that the Alternative Payee be awarded Fifty Per Cent (50%) of the Participant's pension plan as of October, 1994. The Alternative Payee shall be eligible to receive payment of the benefit awarded under this Order on the earliest date benefits could be paid to the Participant under the terms of the Plan. IT IS FURTHER ORDERED that from the benefits which would otherwise be payable to the Participant under The Plan (sic). The Plan shall pay to the Alternate Payee, and the Alternate Payee shall receive directly from The Plan, an amount equal to Fifty Per Cent (50%) of those assets held in Participant's plan from November 1972 to October 1994, together with interest thereon included therein.

For reasons unclear in the record, on October 13, 2006, counsel for the Wife prepared and filed with the Court an order entitled "Amended Qualified Domestic Relations Order." The proposed order stated, in pertinent part, that "The Court awards as the sole and separate property of Sharon K. Chenault an amount equal to one half the total value of the Plan." The proposed order was circulated to counsel for the Husband with a Rule 22 notice.[3] Objections to this proposed Order were made by counsel for the Husband.

---

1. Effective January 1, 2002, the Legislature significantly reorganized the family courts of West Virginia by replacing the family law master system with a new system of family court judges. See W.Va. Const., Art. VIII, § 16 and W.Va.Code § 51–2A–1 to 23 (2001).

2. Neither Husband's counsel nor Wife's counsel was involved in the original divorce proceeding. It is not clear from the record why the Qualified

Domestic Relations Order was not presented earlier.

3. Rule 22 of the West Virginia Family Court Rules states as follows:
(b) *Preparation of orders and findings.*—In proceedings in which both parties are self-represented, the court shall prepare all orders and findings of fact. In proceedings in which one or both parties are represented by attorneys, the court may assign one or more attorneys to pre-

On March, 1, 2007, a hearing was held in the Family Court of Cabell County, on the objections filed by the Husband to the Amended Qualified Domestic Relations Order. The hearing produced the following testimony between counsel for the Husband and the court:

> MR. SMITH: Just so I'm clear on my notes here, she's entitled to one-half of the accrued cash value from '74 [4] through the date of separation.
>
> THE COURT: Yeah.
>
> MR. SMITH: —October '94?
>
> THE COURT: That's standard.
>
> MR. SMITH: That's what I wanted to make sure I got in my notes.
>
> THE COURT: Okay.
>
> MS. CONWAY: Judge—
>
> MR. SMITH: No annuity? No survivor benefit?
>
> THE COURT: Do what?
>
> MR. SMITH: I said no annuity. No survivor benefit? Just the accrued cash value? Is that—
>
> THE COURT: She's entitled to that. And whatever she gets out of that, she can do with it what she wants.
>
> MR. SMITH: Okay. Not an annuity or survivor benefit.
>
> THE COURT: That wasn't part of it.

This hearing was memorialized by order entered March 29, 2007. The order stated, inter alia:

> ... the Court finds and does ORDER that the parties' final divorce decree did not provide for the Petitioner to receive any type of annuity or survivor benefit from either the Respondent's Army retirement or his U.S. Marshal's Service retirement. The parties' final divorce Order did provide, however, for the Petitioner to receive one-half of the accrued value of the Respondent's aforesaid retirement plans from November 1972 through October 1994, which shall be the ORDER of this Court.

On June 28, 2007, the Family Court of Cabell County entered its "Second Amended Qualified Domestic Relations Order." This order awarded to the Wife "an amount equal to one-half the total value of the plan." In a later part of the order was a paragraph stating that "pursuant to the equitable distribution as ordered by the Court in the Final Decree of divorce, the Court hereby ORDERS that the Alternate Payee be awarded Fifty Per Cent (50%) of the Participant's pension plan acquired as of October, 1994." This order further stated that "the Plan shall pay to the Alternate Payee, and the Alternate Payee shall receive directly from The Plan, an amount equal to Fifty Per Cent (50%) of those assets held in Participant's plan from November 1972 to October 1994 [5], together with interest thereon included therein."

The Husband appealed the Second Amended Qualified Domestic Relations Order to the Circuit Court of Cabell County. By Order entered October 15, 2007, the Husband's appeal was denied.

The Husband subsequently appealed the circuit court's denial of his appeal from the family court to this Court. By Order dated June 11, 2008, this Court agreed to review the lower courts' decisions.

---

pare an order or proposed findings of fact. An attorney assigned to prepare an order or proposed findings shall deliver the order or findings to the court no later than ten days after the conclusion of the hearing giving rise to the order or findings. Within the same time period the attorney shall send all parties copies of the draft order or findings together with a notice which informs the recipients to send written objections within five days to the court and all parties. If no objections are received, the court shall enter the order and findings no later than three days following the conclusion of the objection period. If objections are received, the court shall enter an order and findings no later than ten days after the receipt of the objections.

4. It is unclear why counsel stated 1974. Our review of the record indicates that the Wife's entitlement to an interest in the Husband's pension would have commenced at the date of the marriage in 1972.

5. The QDROs appear to list the date of the parties' marriage and date of separation by month and year. We believe that the absence of a date certain for both the date of marriage and the date of separation could be troublesome for the retirement plan administrator. In order to appropriately divide the Husband's pension, the month, date and year of applicable dates should be included in the order.

## II.

### STANDARD OF REVIEW

In *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004), we set forth the applicable standard of review regarding family court appeals. In Syllabus Point 1 we held:

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

With these standards in mind, we now consider the issues presented in this case.

### III.

### DISCUSSION

At the outset, we observe that it is undisputed herein that the Wife is entitled to the marital share of the pension contributions made during the course of the parties' active marriage. Likewise, it appears undisputed that the Wife is entitled to only that share of the pension or retirement benefits that accrued from the marital share, as opposed to that which is attributable to the post-divorce employment of the Husband. What does appear to be in dispute is whether the order which was entered below, and which is before us now, accurately reflects the actual understandings of the parties and ruling of the court. We conclude that it does not.

When a dispute arises in the equitable distribution of retirement and pension benefits, the family courts may take guidance in preferred methods of distribution. We have previously stated a preferential order for dividing pension and retirement benefits:

When a court is required to divide vested pension rights that have not yet matured as an incident to the equitable distribution of marital property at divorce, the court should be guided in the selection of a method of division by the desirability to disentangling the parties from one another as quickly and cleanly as possible. Consequently, a court should look to the following methods of dividing pension rights in this descending order of preference unless peculiar facts and circumstances dictate otherwise: (1) lump sum payment through a cash settlement or offset from other available material assets; (2) payment over time of the present value of the pensions rights at the time of divorce to the non-working spouse; (3) a court order requiring that the non-working spouse share in the benefits on a proportional basis when and if they mature. Syllabus Point 5, *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987).

The court below opted to divide the Husband's pension rights with the use of a Qualified Domestic Relations Order. Under the Internal Revenue Code, a QDRO is defined as a domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 26 U.S.C. § 414(p)(1)(A)(I).

The requirements of a QDRO are defined by federal law.[6] The plan administrator then

---

6. 26 U.S.C.A. § 414 states, in pertinent part:
(p) Qualified domestic relations order defined.—For purposes of this subsection and section 401(a)(13)—
(1) In general.—
(A) Qualified domestic relations order.—The term "qualified domestic relations order" means a domestic relations order—
(i) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
(ii) with respect to which the requirements of paragraphs (2) and (3) are met.

(B) Domestic relations order.—The term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which—
(i) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
(ii) is made pursuant to a State domestic relations law (including a community property law).
(2) Order must clearly specify certain facts.—A domestic relations order meets the requirements of this paragraph only if such order clearly specifies—

follows the directions of the QDRO and takes such actions as are necessary to secure the other party's interest in the pension or retirement.

What appears [7] to have not happened over the nearly decade-long course of this proceeding is the entry of an appropriate qualified domestic relations order allocating to the Wife her appropriate share of the Husband's retirement benefits. Therefore, this Court is not reviewing so much a conclusion of law or finding by the lower courts, but rather reviewing whether the order entered below accurately reflects the agreements of the parties. It does not.

The earliest order wherein the court attempted to address the division of the Husband's retirement was entitled Qualified Domestic Relations Order and was entered on June 1, 2006. The Second Amended Qualified Domestic Relations Order entered by the Family Court of Cabell County on June 28, 2007, again attempted to divide the marital interest in the appellant's federal retirement annuity pursuant to the parties' agreement. Neither order accurately and completely reflects the agreement of the parties and the lower courts' rulings, nor does either give the retirement plan administrator authority to separate the Wife's interest in the Husband's pension. Both orders fail to specify the dates of marriage and separation; instead, the orders use generic dates. In order to clearly reflect the parties' agreements and the lower court's

order regarding the Wife's appropriate share of the Husband's pension and retirement, the order must contain specific instructions and directives to the plan administrator. Therefore, the QDROs must be reversed and this case must be remanded to the Family Court of Cabell County for entry of a correct QDRO.

In the new QDRO, the Wife's marital share should be defined by specific date, beginning with the date of the marriage and ending with the agreed date of separation. Only with such specific dates will the plan administrator be able to appropriately distribute the Wife's marital share. Unfortunately the passage of time means that the QDRO will separate a pension that is currently being distributed, instead of segregating the pension as was anticipated at the time of the entry of the divorce order. We are aware that the Husband sought injunctive relief with the lower courts with regard to the distribution of the Husband's retirement funds, fearing that the plan administrator would distribute one-half of the total pension amount.[8] The family and circuit courts continue to have jurisdiction and the authority to offset any overpayment to the Wife occasioned by the erroneous Qualified Domestic Relation Orders.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the Qualified Domestic Relations Or-

(A) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
(B) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
(C) the number of payments or period to which such order applies, and
(D) each plan to which such order applies.
(3) Order may not alter amount, form, etc., of benefits.—A domestic relations order meets the requirements of this paragraph only if such order—
(A) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,
(B) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(C) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

7. The parties have designated as the record in this instant appeal only portions of the circuit court's file relating to the QDRO at issue.

8. The Husband first filed in Family Court an emergency motion seeking to "amend, supersede or set aside the Second Amended Qualified Domestic Relations Order." No order was entered regarding that motion. The Husband then sought injunctive relief in the Circuit Court of Cabell County in Case Number 08–C–0084. It appears that no final order has been entered in that civil action.

der entered June 28, 2007, is reversed, and this case is remanded to the Circuit Court of Cabell County with directions to enter an order remanding this case to the Family Court of Cabell County for entry of a Qualified Domestic Relations Order that distributes only the marital share of the Husband's pension and retirement benefits.

**Reversed and Remanded with Directions.**