# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Thomas D. Chenault,
**Respondent Below, Petitioner**

**FILED**

**June 24, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

vs) **No. 12-1061** (Cabell County 94-D-863)

Sharon K. Chenault,
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Thomas D. Chenault, by counsel J. Roger Smith II, appeals the July 18, 2012 order of the Circuit Court of Cabell County that affirmed the October 7, 2011 order of the Family Court of Cabell County regarding the division of Mr. Chenault's military pension in a divorce action. Respondent Sharon K. Chenault, by counsel Arik C. Paraschos, filed a response to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties married in November of 1972; separated in October of 1994; and were divorced by a bifurcated order on March 25, 1996. Respondent, the "Wife," was a teacher. Petitioner, the "Husband" was a federal employee who served in the Army Reserve. The parties' January 8, 1998, final divorce order required that the parties' pensions "be subject to Qualified Domestic Relations Orders of Fifty Percent (50%) each" and that the Wife was to be "awarded one-half of [the Husband's] Civil Service pension and one-half of his Army Reserve pension." The subject of this appeal is the division of the Husband's Army Reserve ("military") pension.

At a March, 1, 2007, family court hearing regarding the division of the Husband's pensions, the following interchange occurred:

THE HUSBAND'S COUNSEL: Just so I'm clear on my notes here, she's entitled to one-half of the accrued cash value from [the date of the parties' marriage] through the date of separation.

THE COURT: Yeah.

THE HUSBAND'S COUNSEL: —October '94?

THE COURT: That's standard.

1

The hearing was memorialized by an order entered March 29, 2007. The order stated, in relevant part, that

> [t]he parties' final divorce Order did provide, however, for the [Wife] to receive one-half of the *accrued value* of the [Husband's] aforesaid retirement plans from November 1972 through October 1994, which shall be the ORDER of this Court.

(Emphasis added.)

Thereafter, the Husband appealed a June 28, 2007 order of the family court regarding the division of his federal civil service pension that awarded the Wife "an amount equal to one-half of the total value of the plan." The circuit court affirmed the family court's order. The Husband then appealed to this Court. In *Chenault v. Chenault*, 224 W.Va. 141, 680 S.E.2d 386 (2009) ("*Chenault I*"), we reversed the circuit court and remanded the case with instructions to the family court to enter a qualified domestic relations order ("QDRO") that distributed one-half of the *marital share* of the Husband's retirement benefits to the Wife. *Id.* at 147, 680 S.E.2d at 392.

On September 27, 2010, the family court entered yet another order regarding the division of the Husband's pensions, in which it said,

> [the Husband] through counsel opines that [the Wife] is only entitled to a *monetary value* of the pension in their interpretation of the [March 29, 2007, order]. . . . This [c]ourt does not remember ruling on that matter. . . .
>
> The [c]ourt has gone back and reviewed the prior orders in this case. The [1998 final order] . . . is the controlling Order.
>
> It is this Court's interpretation that [the Wife] is entitled to [an order] setting aside her appropriate portion, [50%] of [the Husband's] Civil Service pension and the Army Reserve pension.

(Emphasis added.) In accord with this September 27, 2010 order, the family court entered a "Military Pension Division Order" ("MPDO") on September 8, 2011, that awarded the Wife 50% of the Husband's military pension. On October 7, 2011, the Husband appealed the entry of the MPDO to the circuit court. By order entered July 18, 2012, the circuit court affirmed the family court's entry of the MPDO. It is from this order that the Husband now appeals.

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

On appeal, the Husband first argues that the circuit court erred in affirming the family court's entry of the MPDO because the parties' final divorce order and this Court in *Chenault I* required entry of a QDRO.

The circuit court did not abuse its discretion in affirming the family court's entry of a MPDO in lieu of a QDRO. The Uniform Services Former Spouses Protection Act, 10 U.S.C. § 1408 (the "Act"), does not require that a QDRO be used to divide a military pension between former spouses. The Act merely requires that the award be set forth in a "court order," which is defined by 10 U.S.C. § 1408(a)(2) as follows:

> The term "*court order*" means a final decree of divorce, dissolution, annulment, or legal separation *issued by a court*, or a court ordered, ratified, or approved property settlement incident to such a decree (including a final decree modifying the terms of a previously issued decree of divorce, dissolution, annulment, or legal separation, or a court ordered, ratified, or approved property settlement incident to such previously issued decree), or a support order, as defined in section 453(p) of the Social Security Act (42 U.S.C. 653(p)), which—
>
> > (A) *is issued in accordance with the laws of the jurisdiction of that court*;
> >
> > (B) *provides for—*
> >
> > > (i) payment of child support (as defined in section 459(i)(2) of the Social Security Act (42 U.S.C. 659(i)(2)));
> > >
> > > (ii) payment of alimony (as defined in section 459(i)(3) of the Social Security Act (42 U.S.C. 659(i)(3))); or
> > >
> > > (iii) division of property (including a division of community property); and
> >
> > (C) in the case of *a division of property*, *specifically provides for the payment of an amount*, expressed in dollars or *as a percentage of disposable retired pay*, *from the disposable retired pay of a member to the* spouse or *former spouse of that member*.

(Emphasis added) Thus, it is immaterial whether the court order dividing the Husband's military pension was a MPDO or a QDRO, as long as the order was consistent with 10 U.S.C. § 1408(a)(2). Here, the family court's MPDO was consistent with 10 U.S.C. § 1408(a)(2) because it was issued by a court, in accordance with the laws of the jurisdiction of that court, in a case of division of property, and it expressed the Wife's award as a percentage of the Husband's disposable retired pay. Therefore, we find that the circuit court did not abuse its discretion in entering the MPDO instead of a QDRO.

The Husband next argues that the circuit court erred in affirming the family court's entry of the MPDO because he never agreed to the "disposable military retired pay" language found in

the MPDO. As we noted above, 10 U.S.C. § 1408(a)(2)(C) provides that "in the case of a division of property, [the court order must] specifically provide[] for the payment of an amount, expressed in dollars or as a percentage of *disposable retired pay*, from the disposable retired pay of a member to the spouse or former spouse of the member." (Emphasis added). Pursuant to 10 U.S.C. § 1408(a)(4), "[t]he term 'disposable retired pay' means the total monthly retired pay to which a member is entitled less [authorized deductions]. . . ." In accordance with that definition, the MPDO entered by the family court and affirmed by the circuit court properly provided that, "[t]his Order assigns to the Former Spouse an amount equal to 50% of the Member's final disposable retired pay." Therefore, we find that the family court did not abuse its discretion in using the term "disposable military retired pay" in the MPDO.

The Husband's third argument is that the circuit court erred in affirming the family court's entry of the MPDO because the divorce date listed in the MPDO, "January 1998," is incorrect. The Husband argues that the parties agreed to use a separation date of October 1, 1994, in calculating the division of their marital property. The Husband claims that use of the January 1998 date wrongfully gives the Wife a credit for the Husband's post-separation contributions to his military pension plan.

The January 1998 date of which the Husband complains is contained in the section of the MPDO entitled "Duration of Marriage Acknowledgment (Compliance with 10/10 Rule)[.]" Under that heading, the MPDO reads as follows:

> The Member and the Former Spouse acknowledge that they have been married for a period of more than ten years during which time the Member performed more than ten years of creditable military service. The Former Spouse and Member were married on November 6. 1972[,] and were divorced in January of 1998.

As this statement implies, for a former spouse to be eligible to receive a portion of a member-spouse's disposable retired pay under the Act, the parties must have been married for a period of more than ten years during which the member-spouse performed more than ten years of creditable military service. *See* 10 U.S.C. § 1408(d)(2). Therefore, the January 1998 date was included in the MPDO to satisfy the "10/10" rule and thereby show that the Wife was eligible to receive a portion of the Husband's disposable retired pay. Hence, the inclusion of the January 1998 date in the MPDO in no way modified the percentage of the Husband's military pension that the Wife was to receive. As such, the circuit court did not err in including the parties' January of 1998 divorce date in the MPDO.

The Husband's fourth argument flows from the interchange noted above between the Husband's counsel and the family court at the March, 1, 2007, hearing, and from the resulting order in which the family court stated that (1) the Wife was "to receive one-half of the *accrued value* of the [Husband's] aforesaid retirement plans from November 1972 through October 1994[.]" The Husband argues that based on this language, the Wife should receive only half of the *accrued cash value* of his military pension as of the date of the parties' separation. Alternatively, the Husband argues that the March 29, 2007, order modified the parties' 1998 final divorce order and, therefore, the Wife's pro-rata share of his military pension should be based solely on the Husband's cash contributions during the marriage.

4

The Husband made these same arguments in *Chenault v. Chenault*, No. 11-1532 (W.Va. Supreme Court, June 24, 2013) (memorandum decision) ("*Chenault II*"), regarding the division of his federal civil service pension between the parties. In *Chenault II* we found that the circuit court did not err in affirming the entry of a QDRO that divided the Husband's federal civil service pension between the parties. Our reply to the Husband's argument in this appeal is the same as that which we espoused in *Chenault II*:

> The Husband's assertion—that the March 29, 2007, order gives the Wife only half of the *accrued cash value* of the Husband's retirement benefits—is incorrect. The March 29, 2007, order actually states that, "the parties' final divorce Order did provide, however, for [the Wife] to receive one-half of the *accrued value* of [the Husband's] aforesaid retirement plans. . . ." The word "cash" is nowhere to be found in the March 29, 2007, order. Instead, the family court's statement stands in accord with parties' final divorce order because it confirms that the Wife is to receive her half martial share of the Husband's accrued benefits. Therefore, the March 29, 2007, order in no way modifies the parties' final divorce order as the Husband claims.

The Husband's fifth and final argument is that the circuit court erred in affirming the family court's entry of the MPDO because the MPDO wrongfully gives the Wife a greater share of the Husband's military pension than she is entitled to under the parties 1998 final divorce order.

We first note that in his brief on appeal, the Husband failed to explain the mathematical basis for his argument, i.e., how much extra money the Wife will supposedly receive under the terms of the MPDO to which she is not entitled. In Syllabus Point 2 of *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973), we said, "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Further, the MPDO provides in relevant part as follows: "This order assigns to the Former Spouse an amount equal to 50% of the Member's final disposable retired pay." Consequently, the circuit court did not abuse its discretion in affirming the family court's entry of the MPDO because the MPDO accurately mirrors the terms of the parties' 1998 final divorce order as well as the requirements of 10 U.S.C. § 1408(a)(2)(c) ("[I]n the case of a division of property, [the court order must] specifically provide[] for the payment of an amount, *expressed* in dollars or *as a percentage of* disposable retired pay. . . ." (Emphasis added)).

For the foregoing reasons, we affirm.

Affirmed.

5

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Menis E. Ketchum

Justice Ketchum dissents and states that the circuit court erred in its analysis.