# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Thomas D. Chenault,**
**Respondent Below, Petitioner**

**FILED**

June 24, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 11-1532** (Cabell County 94-D-863)

**Sharon K. Chenault,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Thomas D. Chenault, by counsel J. Roger Smith II, appeals the September 9, 2011, order of the Circuit Court of Cabell County that affirmed the September 27, 2010 order of the Family Court of Cabell County regarding the division of Mr. Chenault's federal civil service pension in a divorce action. Respondent Sharon K. Chenault, by counsel Arik C. Paraschos, filed a response to which petitioner replied. Thereafter, upon the Court's request, the Husband filed a supplemental brief that was to address the mathematical basis for the division of his civil service pension. The Wife filed a response to the Husband's supplemental brief to which the Husband replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties married in November of 1972; separated in October of 1994; and were divorced by a bifurcated order on March 25, 1996. Respondent, the "Wife," was a teacher. Petitioner, the "Husband," was a federal employee who had also served in the Army Reserve. The parties' January 8, 1998, final divorce order required that the parties' pensions "be subject to Qualified Domestic Relations Orders of Fifty Percent (50%) each" and that the Wife was to be "awarded one-half of [the Husband's] Civil Service pension and one-half of his Army Reserve pension." The subject of this appeal is the division of the Husband's federal civil service pension.

The Husband retired in May of 2004 and took his civil service pension as an annuity.

In June of 2006, the Wife's counsel submitted a qualified domestic relations order ("QDRO") to the United States Office of Personnel Management ("OPM") that the Husband claims was subsequently rejected. The Wife amended the QDRO. The Husband objected to the amended QDRO. At a March, 1, 2007, family court hearing on the Husband's objections, the following interchange occurred:

1

HUSBAND'S COUNSEL: Just so I'm clear on my notes here, she's entitled to one-half of the accrued cash value from [the date of the parties' marriage] through the date of separation.

THE COURT: Yeah.

THE HUSBAND'S COUNSEL: —October '94?

THE COURT: That's standard.

THE HUSBAND'S COUNSEL: That's what I wanted to make sure I got in my notes.

THE COURT: Okay.

THE WIFE'S COUNSEL: Judge—

THE HUSBAND'S COUNSEL: No annuity? No survivor benefit?

THE COURT: Do what?

THE HUSBAND'S COUNSEL: I said no annuity. No survivor benefit? Just the accrued cash value? Is that—

THE COURT: She's entitled to that. And whatever she gets out of that, she can do with it what she wants.

THE HUSBAND'S COUNSEL: Okay. Not an annuity or survivor benefit.

THE COURT: That wasn't part of it.

The hearing was memorialized by an order entered March 29, 2007. The order stated, in part, that

> the Court finds and does ORDER that the parties' final divorce decree did not provide for the [Wife] to receive any type of annuity or survivor benefit from either the [Husband's] Army retirement or his [Civil] Service retirement. The parties' final divorce Order did provide, however, for the [Wife] to receive one-half of the accrued value of the [Husband's] aforesaid retirement plans from November 1972 through October 1994, which shall be the ORDER of this Court.

The family court entered the Wife's second amended QDRO on June 28, 2007, that awarded the Wife "an amount equal to one-half the total value of the plan." The Husband's appeal of the second amended QDRO was denied by the circuit court. The Husband thereafter appealed to this Court. In *Chenault v. Chenault*, 224 W.Va. 141, 680 S.E.2d 386 (2009) ("*Chenault I*"), this Court reversed the circuit court on the grounds that (1) the second amended QDRO did not adequately reflect the parties' agreement that the Wife would receive half of the

*marital share* of the Husband's pension, and (2) the QDRO failed to include sufficient information for the plan administrator to properly apportion the Husband's benefits. *Id.* at 146, 680 S.E.2d at 391. The Court remanded the case with instructions to the family court to enter a QDRO that distributed half of the marital share of the Husband's retirement benefits to the Wife. *Id.* at 147, 680 S.E.2d at 392.

The Wife's third amended QDRO was sent to OPM in September of 2009. According to the Husband, OPM notified both parties that changes needed to be made to the third amended QDRO before it could be accepted. Thereafter, the Wife submitted a Court Order Acceptable for Processing ("COAP") to OPM in lieu of a fourth amended QDRO. The COAP provided that all former QDROs were to be set aside. The Husband objected to the COAP.

On September 27, 2010, the family court entered yet another order regarding the division of the Husband's pensions, in which it said,

> [the Husband] through counsel opines that [the Wife] is only entitled to a monetary value of the pension in their interpretation of the [March 29, 2007, order]. . . . This [c]ourt does not remember ruling on that matter. . . .
>
> The [c]ourt has gone back and reviewed the prior orders in this case. The [1998 final order] . . . is the controlling Order.
>
> It is this Court's interpretation that [the Wife] was granted in 1996 and is now entitled to [an order] setting aside her appropriate portion, (50%) of [the Husband's] Civil Service pension and the Army Reserve pension. Having made that Decision, it is the [c]ourts opinion that the QDRO or equivalent COAP . . . is appropriate and should be entered.

Although the family court approved the COAP, it withheld entering it until the Husband's appeal to the circuit court could be resolved.

By order entered July 12, 2011, the circuit court affirmed the family court's ruling on the COAP. On July 19, 2011, the family court entered the COAP. The Husband appealed the entry of the COAP to the circuit court. Following a hearing on the matter, the circuit court denied the Husband's appeal by order entered September 9, 2011. It is from this order that the Husband now appeals.

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

3

On appeal, the Husband raises four assignments of error. The Husband first argues that the circuit court erred in affirming the family court's entry of the COAP because the parties' final divorce order, and this Court in *Chenault I*, required entry of a QDRO.

We find that the circuit court did not abuse its discretion in affirming the family court's entry of the COAP. "A court order acceptable for processing (COAP) is required by federal regulations in order for OPM to distribute, as provided for in a state court decree of divorce, a marital share of a party's [Civil Service Retirement System] pension to a person other than the federal employee. 5 U.S.C. § 8345(j)(1); 5 C.F.R. §§ 838.101, 838.303-838.306." *Plachy v. Plachy*, 652 S.E.2d 555, 556 n. 1 (Ga. 2007). We also find that the COAP entered by the family court does not stand in contradiction to the spirit of this Court's holding in *Chenault I*, because the COAP distributes the Wife's half marital share of the Husband's civil service pension as we instructed in that case.

The Husband's second assignment of error flows from the interchange noted above between the Husband's counsel and the family court at the March, 1, 2007, hearing, and from the resulting order in which the family court stated that (1) the Wife was "to receive one-half of the *accrued value* of the [Husband's] aforesaid retirement plans from November 1972 through October 1994[,]" and (2) the Wife was not entitled to "any type of annuity or survivor benefit." Based on this language, the Husband argues that the Wife should receive only half of the *accrued cash value* of his civil service pension as of the date of the parties' separation. Alternatively, the Husband argues that the March 29, 2007, order modified the parties' 1998 final divorce order and, therefore, the Wife's pro-rata share of his retirement annuity should be based solely on the Husband's cash contributions during the marriage. Finally, the Husband claims that the COAP wrongfully provides the Wife with a survival benefit.

The Husband's assertion—that the March 29, 2007, order gives the Wife only half of the *accrued cash value* of the Husband's retirement benefits—is incorrect. The March 29, 2007, order actually states that, "the parties' final divorce Order did provide, however, for [the Wife] to receive one-half of the *accrued value* of [the Husband's] aforesaid retirement plans. . . ." (Emphasis added.) The word "cash" is nowhere to be found in the March 29, 2007, order. Instead, the family court's statement stands in accord with parties' final divorce order because it confirms that the Wife is to receive her half martial share of the Husband's *accrued* benefits. Therefore, the March 29, 2007, order in no way modifies the parties' final divorce order as the Husband claims.

The Husband's assertion—that the COAP grants the Wife a survivorship benefit in the Husband's Civil Service retirement benefits—is also in error. The COAP clearly provides that the Wife's benefits cease when the Husband dies. The relevant portion of the COAP states the following:

> Benefit Commencement Date: The Nonmember Former Spouse [the Wife] shall commence her benefits as soon as administratively possible following the date this Order is approved by a COAP, or upon the member's [the Husband's] retirement, if later. Payments shall continue to the Nonmember Former Spouse [the Wife] for the *remainder of the Member's* [the Husband's] *lifetime*.

4

(Emphasis added.)

Petitioner's third assignment of error is that the circuit court erred in affirming the family court's entry of the COAP where the family court did not first consider the requirements and terminology of Part 838 of Title 5 of the Code of Federal Regulations regarding COAPs generally. The Husband highlights that the first paragraph of the COAP states that the family court considered Part 838 prior to the COAP's entry. The Husband claims, however, that at the September 13, 2010, hearing on the COAP, the family court stated that it would not read Part 838, even if the parties produced it. The Husband contends that the family court's failure to consider the impact of Part 838 on the Husband's retirement benefits was an abuse of discretion, clearly erroneous, and contrary to law.

We first note that the Husband admits that the record on appeal does not contain the family court's alleged statement regarding Part 838. Moreover, the Husband fails to state how he was prejudiced by the family court's alleged failure to read Part 838. "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). Therefore, because the Husband failed to meet his burden on appeal, we must presume the correctness of the circuit court's proceedings.

Petitioner's fourth and final assignment of error is that the circuit court erred in affirming the family court's entry of the COAP because the COAP gives the Wife a benefit from the Husband's post-divorce earnings and contributions to his pension because the Husband's annuity was based, in part, on his post-separation earnings.

Petitioner's civil service pension was divided between the parties based on the deferred distribution method because, when the parties' final order was entered, the Husband had not yet retired and was not yet eligible to receive his civil service pension benefits. In *McGee v. McGee*, 214 W.Va. 36, 585 S.E.2d 36 (2003), we said,

> [w]here retirement benefits are allocated utilizing the deferred distribution method, the non-employee spouse is awarded a fixed percentage of retirement benefits to be distributed when such benefits mature. . . . The amount of benefits to which the non-employee spouse is entitled is calculated by multiplying the fixed percentage of retirement benefits by the coverture fraction. The coverture fraction is the ratio of the number of years of employment during the marriage prior to the separation of the parties to the total number of years the employee spouse has been employed under the pension plan being addressed.

*Id.* at 45-46, 585 S.E.2d at 45-46. Here, the COAP entered by the family court calculated the parties' coverture fraction in accordance with *McGee*. The COAP entered by the family court provides as follows:

5

> For purposes of calculating the Nonmember Former Spouse's share of the Member benefit, the Marital Portion shall be determined by multiplying the Member's self-only, unreduced, Monthly Annuity by a fraction, the numerator of which is the total number of months of the Member's Creditable Service during the marriage (November 6, 1972 through October 1, 1994), and the denominator of which is the total number of months of the Member's Creditable Service accrued under [Civil Service Retirement System] at retirement.

The Husband fails to state in his brief on appeal or in his supplemental brief to this Court how this language fails to properly apply *McGee's* coverture fraction formula.

As for the Husband's argument that the Wife's marital share should not include any of the Husband's post-separation benefits, we recognized in *McGee* that the application of a marital coverture fraction permits the non-employee spouse to realize some post-separation benefits: "To achieve the final division of retirement benefits when utilizing the deferred distribution method, post-separation enhancements are allocated between the employee spouse and the non-employee spouse." Syl. Pt. 6, in part, *id.* We also noted that "[t]he well-reasoned authority of other jurisdictions addressing the issue of allocation and valuation of retirement benefits supports the conclusion that recipients of a fixed percentage of pension benefits enjoy post-separation increases in pension benefits since final division is deferred. . . ." *Id.* at 41, 585 S.E.2d at 41. Therefore, pursuant to *McGee*, the Wife's enjoyment of her share of any post-separation enhancements to the Husband's civil service pension is not improper and, as such, the circuit court did not err in affirming the family court's entry of the COAP.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Menis E. Ketchum

Justice Ketchum dissents and states that the circuit court erred in its analysis.