IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0924
_____

FILED

April 24, 2023

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CARL A.,
Petitioner

v.

DEBORAH A.,
Respondent

_____

Appeal from the Family Court of Kanawha County
The Honorable Lera K. VanMeter, Judge
Civil Action No. 2000-D-887

AFFIRMED

_____

Submitted: January 11, 2023
Filed: April 24, 2023

Sarah E. Dixon, Esq.
Dixon Law Office, PLLC
Huntington, West Virginia
Counsel for Petitioner

Nicholas Gordon, Esq.
Lyne Ranson Law Offices, PLLC
Charleston, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

# SYLLABUS BY THE COURT

1. "In reviewing a final order of a family court judge that is appealed directly to this Court, we review findings of fact by a family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt. 1, *May v. May*, 214 W. Va. 394, 589 S.E.2d 536 (2003).

2. "Rule 60(b) of the West Virginia Rules of Civil Procedure provides a basis for relieving a party from a final judgment upon the following grounds: (1) mistake, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct; (4) the judgment is void; (5) the judgment has been satisfied or vacated; or (6) any other reason justifying relief. The motion for relief must be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than [one year] after the judgment order was entered." Syl. Pt. 1, *Savas v. Savas*, 181 W. Va. 316, 382 S.E.2d 510 (1989).

3. "When a court undertakes to analyze a Rule 60(b) motion based on grounds (1), (2), (3), or (6) of the Rule, it must determine first if the motion has been filed within [one year] after the judgment was entered and then determine, under all the circumstances, if it was filed within a reasonable time." Syl. Pt. 2, *Savas v. Savas*, 181 W. Va. 316, 382 S.E.2d 510 (1989).

ARMSTEAD, Justice:

Petitioner Carl A. ("Husband") and Respondent Deborah A. ("Wife") were divorced by final order entered by the Circuit Court of Kanawha County ("circuit court") in September of 2000. The circuit court entered a qualified domestic relations order ("QDRO") in March of 2001. Over nineteen years later, Husband filed a motion to vacate the QDRO. The Family Court of Kanawha County ("family court") denied this motion on August 31, 2021. It determined that the QDRO and the final divorce order contained conflicting terms regarding the division of Husband's retirement benefit, and that when such a conflict exists, the QDRO must be enforced.

On appeal, Husband argues that the family court erred by concluding that the QDRO, rather than the final divorce order, must control the division of his retirement benefit. After review, we find that Husband's motion to vacate the QDRO, filed over nineteen years after the QDRO was entered, was untimely under Rule 60(b) of the West Virginia Rules of Civil Procedure. Therefore, we affirm the family court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties were divorced by final order entered by the circuit court on September 25, 2000. Both parties were represented by counsel when the divorce order was entered. The divorce order lists the following as a marital asset belonging to Wife: "[Husband]'s Retirement Pension as of [the] date of the parties['] separation on April 30, 2000. [Wife] shall be responsible for payment of all taxes and penalties incurred as a result of the transfer of the retirement to her." Additionally, the divorce order provides:

1

"**<u>RETIREMENT</u>** - [Wife] shall receive pursuant to a QDRO as her sole property [Husband]'s pension/retirement in the amount of $7,760 and shall be responsible for any payments of taxes and penalties thereon."

Approximately five months after the divorce order was entered, the circuit court entered a QDRO. It stated, in relevant part:

(5) Retirement benefits for the [Wife] pursuant to this Order shall be calculated at such time as benefits for payout to the [Husband] are calculated (the "Calculated Date") whether as a result of retirement, death or withdrawal from service for any other reason.

(6) The [Husband]'s retirement benefits shall be divided between the [Husband] and [Wife] on the Calculation Date as follows:

A. The marital property portion of the [Husband]'s retirement benefits shall be determined as follows: The marital property portion of the [Husband]'s retirement benefits shall be the amount to which the [Husband] is entitled, multiplied by a fraction, the numerator of which shall be the number of months of the [Husband]'s contributing service from the parties' date of marriage through April 30, 2000 and the denominator of which shall be the total number of months of the [Husband]'s contributing service determined as of the Calculation Date.

B. The [Wife] shall be entitled to 100% of the marital property portion of the [Husband]'s retirement benefits as determined in paragraph 6(A), above, payable at the time and in the same manner (either in the annuity form or, if allowed, in a lump sum) as paid to the [Husband] or, if a joint and survivor or other optional form of annuity is elected by the [Husband], at the same time as paid to the [Husband] and the [Husband]'s beneficiary. Provided, however, that nothing in this Order shall be construed as granting the [Wife] any election rights with respect to the form of benefit; rather, the form of benefit at time of payment shall be elected by the [Husband].

2

Both parties were represented by counsel when the QDRO was entered. The QDRO did not include any reference to the specific amount, $7,760.00, that was included in the final divorce order. The QDRO was signed by counsel for both parties and by the circuit court judge. It was entered on March 13, 2001.

At Husband's request, the Consolidated Public Retirement Board ("Board") provided him with a retirement benefit estimate. The Board sent Husband the estimate on April 25, 2019. It stated that pursuant to the "straight life" annuity option, Husband's retirement benefit would be $2,238.77 per month and that Wife would receive $767.42 per month.[1]

On October 21, 2020, approximately eighteen months after receiving the estimate from the Board, Husband filed a "Motion to Vacate [the QDRO]" in family court.[2] In this motion, Husband argued that Wife was only entitled to the amount contained in the divorce order, $7,760.00. He requested that the "QDRO be vacated and an appropriate

---

[1] A retiring PERS (Public Employees Retirement System) member may select from different types of annuities. *See* W. Va. Code § 5-10-24. In addition to the "straight life" option, the Board's estimate provided Husband with the amount he and Wife would receive under two additional options: "Joint Survivor 100%/Death Annuity," and "Joint Survivor 50%/Death Annuity."

[2] The appendix-record Husband submitted to this Court included an unsigned, undated "Motion to Enforce" that Husband purportedly provided to the family court. The "Motion to Enforce" requested the same relief as that contained in his "Motion to Vacate [the QDRO]." The docketing sheet does not include any reference to a "Motion to Enforce" being filed. Further, we note that the appendix-record Husband submitted to this Court did not include the "Motion to Vacate [the QDRO]." This Court, *sua sponte*, ordered the circuit court clerk to prepare "a designated record" of Husband's "Motion to Vacate [the QDRO]."

3

Order [be] provided to [the Board]. [Husband] also requests that [the family court] issue an Order requiring him to make a one-time payment of $7,760.00 directly to [Wife] within 60 days of his retirement." In response, Wife argued that the motion to vacate should be denied. Wife noted that both parties were represented by counsel when they entered into the QDRO and asserted that "[t]he language of the QDRO . . . clearly outlines [the parties'] arrangement and details exactly what is to happen, several times throughout the document."

After holding two hearings, the family court entered an order denying Husband's motion to vacate the QDRO. It found that

> [the divorce order] indicat[es] that the parties understood [Husband]'s retirement was in the form of a defined contribution plan and that [Wife] would receive a sum certain of $7,760 via QDRO. There is a misunderstanding of QDROs in [the divorce order] as the very purpose of a QDRO is to transfer marital retirement funds without the taxes and penalties that would normally be applied.
>
> A [QDRO] was entered on March 13, 2001, with standard, template language for a defined benefit retirement plan or pension plan. There was no reference to the $7,760 awarded to [Wife] in the QDRO because the nature of this type of pension plan does not include a sum certain—as in defined contribution plans.
>
> There is an obvious contradiction between the [divorce order] and the [QDRO].
>
> The cumulative effect of the contradiction . . . is that if this Court enforces the [divorce order], [Wife] shall receive a sum certain $7,760 (plus interest even though this was not contemplated at the time of the divorce). If this Court enforces the QDRO, [Wife] will receive $767.42 each month for the remainder of her life.

4

Although there was clearly attorney error in the . . . [divorce order] and the QDRO, both parties were represented by competent counsel at the time of their divorce. There were no appeals filed at that time. There were no motions for reconsideration filed at that time.

Relying on this Court's decision in *King v. King*, No. 35696 (W. Va. May 16, 2011) (memorandum decision),[3] the family court determined that "in the event there is a contradiction between the final order of divorce and a QDRO, the QDRO shall control." The family court entered its order denying Husband's motion to vacate the QDRO on August 30, 2021. Husband then filed the instant appeal with this Court.

## II. STANDARD OF REVIEW

We have held that "[i]n reviewing a final order of a family court judge that is appealed directly to this Court, we review findings of fact by a family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of

---

[3] *King* was not published on Westlaw. It may be found on this Court's website at http://www.courtswv.gov/supreme-court/memo-decisions/spring2011/35696Memo.pdf (last visited April 24, 2023). It is also on LexisNexis. *See King v. King*, No. 35696, 2011 W. Va. LEXIS 242 (W. Va. May 16, 2011) (memorandum decision). In *King*, this Court addressed a situation in which the final divorce order and the QDRO contained conflicting terms. While the discussion of this issue was not extensive, the Court concluded that

[i]n West Virginia, it is the QDRO which determines the allocation of retirement benefits. As this Court has noted, under the Internal Revenue Code, a QDRO is defined as a domestic relations order 'which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan.' 26 U.S.C. §414(p)(1)(A)(I). Accordingly, the terms of the QDRO must control in this case.

*Id.* at *16-17 (internal quotation and citation omitted).

5

discretion standard. We review questions of law *de novo*." Syl. Pt. 1, *May v. May*, 214 W. Va. 394, 589 S.E.2d 536 (2003).

### III. ANALYSIS

The family court determined that there was a conflict between the final divorce order and the QDRO. To resolve this conflict, the family court examined our ruling in *King* and found that "in the event there is a contradiction between a final order of divorce and a [QDRO], the QDRO shall control." In his appeal to this Court, Husband asserts that the divorce order and the QDRO contain conflicting terms, and he posits multiple theories supporting his position that the QDRO should be vacated.[4] While the family court and Husband focused on the conflicting terms contained in the divorce order and the QDRO, we find that the dispositive issue in this matter is Husband's failure to timely contest the QDRO.[5]

The QDRO was entered by the circuit court in March of 2001. It was signed by counsel for both parties and by the circuit court judge. Husband did not object to the entry of the QDRO, nor did he file an appeal after it was entered. Over nineteen years after

---

[4] Husband attempts to distinguish our ruling in *King* from the present case. He also asserts a number of bases upon which the family court could have granted him relief including equitable distribution, compulsory waiver, general equitable principles coupled with the family court's continuing jurisdiction, constructive trust, and contract law.

[5] "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

it was entered, Husband argued that the QDRO should be vacated because it deviated from the divorce order and that this deviation was due to an "attorney-driven mistake." According to Husband, the QDRO should have awarded Wife the fixed sum contained in the divorce order, $7,760.00. Instead, due to the "attorney-driven mistake" that Husband argues is contained in the QDRO, Wife will receive $767.42 per month. Thus, the crux of Husband's argument is that he is entitled to relief from the circuit court's order based on mistake.

Husband's motion to vacate the QDRO did not identify the authority upon which the family court could grant him relief. We find that the relief Husband seeks—to vacate the circuit court's order based on mistake—is contained in Rule 60(b) of the Rules of Civil Procedure.[6] Therefore, we consider Husband's argument pursuant to Rule 60(b).

---

[6] Rule 60(b) provides, in relevant part:

(b) Mistakes; Inadvertence; Excusable Neglect; Unavoidable Cause; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

We have held that

> Rule 60(b) of the West Virginia Rules of Civil Procedure provides a basis for relieving a party from a final judgment upon the following grounds: (1) **mistake**, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct; (4) the judgment is void; (5) the judgment has been satisfied or vacated; or (6) any other reason justifying relief. The motion for relief must be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than [one year][7] after the judgment order was entered.

Syl. Pt. 1, *Savas v. Savas*, 181 W. Va. 316, 382 S.E.2d 510 (1989) (emphasis added, footnote added).

Our first step under Rule 60(b) is to determine whether the relief was timely sought. In syllabus point two of *Savas*, we held that

> [w]hen a court undertakes to analyze a Rule 60(b) motion based on grounds (1), (2), (3), or (6) of the Rule, it must determine first if the motion has been filed within [one year] after the judgment was entered and then determine, under all the circumstances, if it was filed within a reasonable time.

*Id.* at Syl. Pt. 2.

Accordingly, a party fulfills the first step necessary to be relieved from a final judgment based on mistake if the party files a motion within one year of the judgment being entered. Husband's motion to vacate the QDRO based on his claim that it contains an

---

[7] A prior version of Rule 60(b) provided that a motion for relief shall be made not more than eight months after final judgment. The rule was later amended to provide that a motion shall be made not more than one year after judgment.

"attorney-driven mistake" was filed over nineteen years after the order was entered. Thus, Husband's motion to vacate the QDRO is untimely under Rule 60(b).[8]

Additionally, even if we concluded that Husband was unable to discover the "attorney-driven mistake" in the QDRO until he requested the retirement benefit estimate from the Board, his motion to vacate would still be untimely under Rule 60(b).[9] The Board sent Husband a retirement benefit estimate on April 25, 2019, informing him that Wife would receive $767.42 per month. After receiving this estimate, Husband waited approximately eighteen months to file his motion to vacate the QDRO in family court. Thus, even if we concluded that Husband could not have discovered the "attorney-driven mistake" in the QDRO until he received the Board's retirement benefit estimate, he failed

---

[8] In another case in which a party sought relief from a judgment entered decades earlier, this Court found that the motion was untimely under Rule 60(b):

> [Petitioner] made a motion in March, 1989, for relief from the December 7, 1961, judgment under Rule 60(b), but did not specify upon which subsection of Rule 60(b) he was relying. Regardless, the motion was filed outside either of the time limitations provided in Rule 60(b). Twenty-eight years passed between the 1961 judgment and [Petitioner's] 1989 motion, decades more than eight months and any reasonable period of time.

*Corathers v. Facemire*, 185 W. Va. 78, 80, 404 S.E.2d 769, 771 (1991).

[9] Husband did not address why he was unable to discover the "attorney-driven mistake" in a timely fashion. His brief to this Court provides: "Had [Husband] realized the attorney error and appealed the QDRO upon its entry, this case would have yielded an easy reversal . . . [but] he discovered that error only later[.]" Further, Husband did not address why he waited eighteen months to file the motion to vacate the QDRO after receiving his retirement benefit estimate from the Board.

9

to file his motion to vacate the QDRO within one year of discovering the "attorney-driven mistake."[10]

In summary, we find that Husband is not entitled to relief from the QDRO that was entered by the circuit court in 2001. We emphasize that Husband was represented by counsel when that order was entered. Had Husband timely contested the circuit court's entry of the QDRO on the basis that it deviated from the final divorce order due to an "attorney-driven mistake," the Court could have appropriately determined if he was entitled to relief.[11] However, Husband waited almost two decades to raise his argument that the QDRO was entered as a result of an "attorney-driven mistake." Therefore, we affirm the family court's order denying Husband's motion to vacate the QDRO.

## IV. CONCLUSION

The family court's August 30, 2021, order is affirmed.

---

[10] To be clear, we are not suggesting that Rule 60(b)(1) is subject to a discovery rule exception. Instead, we simply note that even if we found that Husband was entitled to some latitude due to the unique facts of this case, his motion to vacate the QDRO was not filed within one year after he received notice from the retirement board that Wife was going to receive a portion of his retirement benefit.

[11] In *Chenault v. Chenault*, 224 W. Va. 141, 680 S.E.2d 386 (2009), Petitioner Husband appealed after the circuit court entered two QDROs. Petitioner Husband argued that the QDROs did not reflect the terms of the final divorce order. The second QDRO in *Chenault* was entered by the circuit court in October of 2007. Petitioner Husband appealed the circuit court's entry of the QDRO to this Court in early 2008. This Court determined that the QDRO did not accurately reflect the final divorce order and remanded the case to the circuit court for entry of a QDRO consistent with the terms of the final divorce order. Unlike the Petitioner in *Chenault* who filed his appeal of the QDRO within months of its entry, Husband in the instant case waited over nineteen years to contest the QDRO.

Affirmed.